141 P.3d 1090

Tedina MAINS and William Mains, husband and wife, Plaintiffs–Appellants,

v.

Robert L. CACH, M.D., Defendant–Respondent.

No. 31879.

Supreme Court of Idaho, Boise, March 2006 Term.

Aug. 1, 2006.

E. Lee Schlender, Mountain Home, for appellants.

Thomsen Stephens Law Offices, PLLC, Idaho Falls, for respondent. J. Michael Wheiler argued.

SCHROEDER, Chief Justice.

Tedina and William Mains, husband and wife, appeal from the district court's decision granting summary judgment in favor of Robert L. Cach, M.D. in a medical malpractice case.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Tedina Mains (Mains) is a licensed practical nurse practicing in Bingham County, Idaho. Robert L. Cach, M.D. (Cach) is a neurosurgeon practicing in Idaho Falls, Idaho. Mains first saw Cach on March 15, 2000. At that time, she had two medical concerns: (1) cervical pain extending into her arms and hand; and (2) lumbar pain radiating into her buttocks, legs, and feet. Mains had previ-

ously gone to other doctors and had tried medications and physical therapy, including chiropractic treatments. Cach did not think Mains needed surgery when he first saw her, and he treated her pain conservatively with physical therapy and painkillers. The conservative approach did not work. Despite her desire to avoid surgery Mains agreed to surgery because she was tired of living with pain.

On December 27, 2000, Mains underwent lumbar surgery performed by Cach, including the following procedures: (1) a decompressive laminectomy from L2 to L5; (2) medial facetectomies, right and left, L2 to S1; (3) diskectomies L2–3, L3–4, intrabody cage placements at L2–3 and L3–4 with posterior intrabody fusion; (4) pedicle screw fixation L3, L4, L5, and S1, both right and left; and (5) a posterior-lateral fusion L2–3, L3–4, L4–5, and L5–S1. Mains alleges that following this surgery, she suffered increased, severe back pain due to the negligent entrapment of nerves by Cach during the surgery, and also, bladder and bowel incontinence and parasthesia of her lower limbs.

Mains sued Cach and Eastern Idaho Regional Medical Center (EIRMC) alleging medical malpractice and lack of informed consent. Mains' medical expert, Farzad Massoudi, M.D. (Massoudi) was deposed and gave testimony concerning his efforts to acquaint himself with the standard of care at the relevant time and place:

Q: The only discussion you've had in relation to the standard of care has been with Dr. Greenwald?

A: Yes.

Q: In that conversation was there any specific discussion as to years, for example, did you ask him what was the standard of care in the year 1999?

A: No, I did not.

Q: What about in the year 2000?

A: No, I did not.

Q: What about anything relative to any specific months?

A: No.

Q: And you talked to him in I guess it was about 2004; is that right?

A: Yes.

On October 22, 2004, Cach filed a Motion for Summary Judgment. On November 1, 2004, the district court signed an Order excluding all of Mains' expert testimony, with the exception of Massoudi's August 26, 2004, deposition. The district court gave Massoudi seven days from October 26, 2004, in which to update his opinion as to whether the standard of care he identified in his deposition was the applicable standard of care at the time of Mains' surgery in Idaho Falls. During this time Cach retained Dr. Greenwald as an expert witness, foreclosing Massoudi from further consultation concerning the standard of care.

On December 22, 2004, the district court dismissed EIRMC from the case. On January 24, 2005 Massoudi filed an affidavit stating the following:

I have acquainted myself with the local standard of care for surgeons and neurosurgeons who perform the same surgery as that performed upon Mrs. Mains by discussing those standards of care with Brent H. Greenwald, M.D., 3200 Channing Way, Idaho Falls, Idaho 83404. Dr. Greenwald advised me that the standard of care for evaluating a patient such as Mrs. Mains and determining whether or not particular types of surgeries including fusion surgery should be performed, during the calendar year 2000 in Idaho Falls, Idaho. It was and is my understanding that Dr. Greenwald during all relevant times including 2000 was a neurosurgeon licensed to practice in the State of Idaho with an active practice in Idaho Falls. Dr. Greenwald advised me as to the local standard of care for such patients with low back pain and whether or not spinal fusion surgery is or is not required. Dr. Greenwald specifically advised me as to the local standard of care that existed in Idaho Falls during the relevant time period of the treatment of Mrs. Mains by Dr. Cach. He also advised me that there was no difference between the Idaho standard of care applicable and the national standard of care; that there were no deviations in the Idaho standard of care which it would be different from the national standard of care of indications for surgical intervention and fusion. He further advised me that

the local standard of care in Idaho Falls, Idaho, applicable to spinal indications for spinal fusion in patients with chronic or medically refractory low back pain in 2000 and further advised that the standard of care applicable was the same as the United States national standard of care.

On February 23, 2005, Mains filed for partial relief from the district court's November 1, 2004, order. A hearing was held on Cach's Motion for Summary Judgment and on Mains' request for partial relief on March 3, 2005. The district court granted Cach's Motion for Summary Judgment as to the medical malpractice claim, finding that Massoudi's affidavit contradicted testimony he gave in an earlier deposition, and hence, failed to demonstrate a familiarity with the applicable standard of care necessary for his testimony to be admitted. The district court denied Cach's motion as to Mains' claim of a lack of informed consent, finding genuine issues of material fact to exist. Concerning Mains' motion for partial relief from the November 1, 2004, order limiting the time window in which Massoudi could update his opinion, the district court gave Mains until May 16, 2005, to have Massoudi update his opinion as to the causation of the nerve damage and to obtain an opinion from a forensic radiologist as to the cause of the nerve damage. The district court also stated: "The reason the plaintiffs were limited on expert opinions by the November 1, 2004 order was because a jury trial was scheduled and the plaintiffs' failure to comply with discovery orders prejudiced Dr. Cach's defense. Since the trial has been rescheduled, the prejudice may be avoided."

Mains moved for reconsideration and to dismiss the claim for a lack of informed consent. The district court denied the Motion for Reconsideration and granted the Motion to Dismiss the claim for lack of informed consent. Mains appeals the grant of summary judgment.

## II.

### STANDARD OF REVIEW

▮ In *Dulaney v. St. Alphonsus Reg'l Med. Ctr.*, 137 Idaho 160, 163–65, 45 P.3d 816, 819–21 (2002) (internal citations omitted), this Court set forth the standard of review for summary judgment orders specifically involving a medical malpractice claim, and also, the admissibility of expert testimony:

The admissibility of the expert testimony is an issue that is separate and distinct from whether that testimony is sufficient to raise genuine issues of material fact sufficient to preclude summary judgment. When considering whether the evidence in the record shows that there is no genuine issue of material fact, the trial court must liberally construe the facts, and draw all reasonable inferences, in favor of the non-moving party. The liberal construction and reasonable inferences standard does not apply, however, when deciding whether or not testimony offered in connection with a motion for summary judgment is admissible. The trial court must look at the witness' affidavit or deposition testimony and determine whether it alleges facts which, if taken as true, would render the testimony of that witness admissible. This Court reviews challenges to the trial court's evidentiary rulings under the abuse of discretion standard.

To avoid summary judgment for the defense in a medical malpractice case, the plaintiff must offer expert testimony indicating that the defendant health care provider negligently failed to meet the applicable standard of health care practice. In order for such expert testimony to be admissible, the plaintiff must lay the foundation required by Idaho Code § 6–1013. To do so, the plaintiff must offer evidence showing: (a) that such opinion is actually held by the expert witness; (b) that the expert witness can testify to the opinion with a reasonable degree of medical certainty; (c) that the expert witness possesses professional knowledge and expertise; and (d) that the expert witness has actual knowledge of the applicable community standard of care to which his expert opinion testimony is addressed.

The applicable community standard of care is defined in Idaho Code § 6–1012. It is: (a) the standard of care for the class of health care provider to which the defendant belonged and was functioning, taking into account the defendant's training, experience, and fields of medical specialization,

if any; (b) as such standard existed at the time of the defendant's alleged negligence; and (c) as such standard existed at the place of the defendant's alleged negligence.

Rule 56(e) of the Idaho Rules of Civil Procedure imposes additional requirements upon the admission of expert medical testimony submitted in connection with a motion for summary judgment. The party offering such evidence must show that it is based upon the witness' personal knowledge and that it sets forth facts as would be admissible in evidence. The party offering the evidence must also affirmatively show that the witness is competent to testify about the matters stated in his testimony. Statements that are conclusory or speculative do not satisfy either the requirement of admissibility or competency under Rule 56(e).

An expert testifying as to the standard of care in medical malpractice actions must show that he or she is familiar with the standard of care for the particular health care professional for the relevant community and time. The expert must also state how he or she became familiar with that standard of care. One method for an out-of-area expert to obtain knowledge of the local standard of care is by inquiring of a local specialist.

### III.

**THERE IS SUFFICIENT EVIDENCE THAT DR. MASSOUDI ACQUAINTED HIMSELF WITH THE LOCAL STANDARD OF CARE AT THE RELEVANT TIME TO DEFEAT SUMMARY JUDGMENT**

The problem with this case is simple. The testimony Massoudi gave in his deposition appears to contradict his subsequent affidavit. The testimony appears to say that he did not inquire as to the standard of care at the relevant time. The affidavit says that he did. Standing by itself, the affidavit would be sufficient to defeat summary judgment. The question is whether the affidavit should be disregarded because of Massoudi's prior deposition testimony.

In *Edmunds v. Kraner*, 142 Idaho 867, 136 P.3d 338, this Court stated the following:

Second, Idaho law specifically contemplates that expert testimony can change after the initial disclosure. Idaho Rule of Civil Procedure 26(e)(1)(B) requires that litigants supplement discovery responses as to "the identity of each person expected to be called as an expert witness at trial, the subject matter on which the person is expected to testify, and the substance of the person's testimony." This Court has held that this rule "unambiguously imposes a continuing duty to supplement responses to discovery with respect to the substance and subject matter of an expert's testimony *where the initial responses have been rejected, modified, expanded upon or otherwise altered in some manner.*" *Clark v. Klein*, 137 Idaho 154, 157, 45 P.3d 810, 813 (2002) (quoting *Radmer v. Ford Motor Co.*, 120 Idaho 86, 813 P.2d 897 (1991)) (emphasis added). In fact, litigants are subject to sanctions, including the exclusion of expert testimony, when they have failed to supplement an expert's opinion. *See, e.g., Radmer*, 120 Idaho at 91, 813 P.2d at 902.

142 Idaho at 874, 136 P.3d at 345.

*Edmunds* is not directly on point, but it is instructive. It indicates that expert testimony may change and should not be discounted simply because it is different from prior testimony. See *Kolln v. St. Luke's Reg'l Med. Ctr.*, 130 Idaho 323, 940 P.2d 1142 (1997), in which the expert referred to in the affidavit filed on behalf of the plaintiff denied providing any information regarding the standard of care to the plaintiff's expert. This Court held that the district court abused its discretion in holding that the affidavit did not raise genuine issues of fact sufficient to preclude summary judgment. Id. at 332–33, 940 P.2d at 1151–52. The issues of credibility should not be resolved at summary judgment unless the record is clear that credence cannot be given to the expert's affidavit.

◼ Massoudi's deposition testimony of July 20, 2004, was the initial disclosure for Mains' medical expert. Idaho Rule of Civil Procedure 26(e)(1)(B) contemplates that testimony may change. See *Edmunds v. Kraner, supra; Clark v. Klein*, 137 Idaho 154, 157, 45 P.3d 810, 813 (2002); *Radmer v. Ford Motor Co.*, 120 Idaho 86, 89, 813 P.2d 897,

900 (1991). Clarity might have come had Massoudi had the opportunity to make further inquiry of the expert he had consulted. However, the Order dated November 1, 2004, gave Massoudi 7 days from October 26, 2004, to update his opinion. In that time frame, on October 29, 2004, the local expert Massoudi had consulted with was retained as an expert for the opposing party, foreclosing the opportunity for Massoudi to consult further.

That being the case, the Court has before it two sources of Massoudi's testimony in deposition and affidavit forms. One part of Massoudi's deposition may be interpreted as contradicting his affidavit. However, another part of Massoudi's deposition may be interpreted as supporting the affidavit. In his July 20, 2004, deposition Massoudi states:

Q: The only discussion you've had in relation to the standard of care has been with Dr. Greenwald?

A: Yes.

Q: In that conversation was there any specific discussion as to years, for example, did you ask him what was the standard of care in the year 1999?

A: No, I did not.

Q: What about in the year 2000?

A: No, I did not.

Q: What about anything relative to any specific months?

A: No.

Q: And you talked to him in I guess it was about 2004; is that right?

A: Yes.

However, in that same deposition, Massoudi also states:

My conclusion based on a review of the records, based on reasonable common intuitive understanding of neurosurgical practice and based upon my conversation with Mr. Greenwald led me to conclude that the local standards of care in Idaho were and are no different than the national standards of care and as such are no different than the standards of care that we use in Southern California.

Massoudi's deposition testimony referencing the past and present standard of care can be interpreted as meaning that the doctors knew they were talking about 2000. The district court itself commented that the time

period referenced to by Massoudi in his deposition was "ambiguous." Massoudi's deposition testimony cannot be read as unquestionably contradicting his later affidavit concerning the relevant time.

Massoudi was asked the following questions and gave the following answers in his deposition:

Q: Have you spoken with any neurosurgeons who are currently practicing or who were practicing in Idaho Falls on or about December 27th, 2000?

A: Yes, Dr. Greenwald in Idaho Falls.

. . .

Q: And I need to ask this question this way, can you give me specifically as close as you can what you asked Dr. Greenwald?

A: I asked Dr. Greenwald about his understanding of surgical indications for spinal fusion in patients with chronic and medically refractory low back pain and if in his understanding those indications used locally in Idaho differed in any way from the national standards of indications for surgical intervention.

Q: Okay. And his answer to that was no?

A: And his answer to that was no that they did not differ, that the local standards were the same as the national standards of care.

A reasonable inference may be drawn that Drs. Massoudi and Greenwald were talking in reference to the applicable standard of care pertaining to Mains' case. Certainly a contrary determination could be made by a trier of fact, but that type of weighing of the evidence is not appropriate for summary judgment. It is not clear that Massoudi failed to establish the relevant time frame for his opinion. Consequently, summary judgment should not have been granted.

## IV.

## CONCLUSION

The district court's order granting summary judgment in favor of Cach is reversed and this case remanded for further proceed-

ings. Appellants are awarded costs on appeal. No attorney fees are awarded.

Justices TROUT, EISMANN, BURDICK and JONES concur.