## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 39414

BILLIE JO MAJOR, an individual,

    Plaintiff-Appellant,

v.

SECURITY EQUIPMENT CORPORATION, a Missouri corporation,

    Defendant-Respondent.

Boise, June 2013 Term

2013 Opinion No. 94

Filed: August 27, 2013

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Cheri C. Copsey, District Judge

Judgment of the district court is vacated.

Jones, Swartz, PLLC, Boise, for appellant. Darwin L. Overson argued.

Greener, Burke, Shoemaker, Oberrecht, PA Boise, for respondent. Christopher C. Burke argued.

---

BURDICK, Chief Justice

This appeal arises from the Ada County district court's decisions regarding a products liability claim between Billie Jo Major and Security Equipment Corporation (SEC). Major brought an action against SEC alleging that the company failed to provide adequate warning to her employer, the Idaho Department of Corrections (IDOC), on the risks of its oleoresin capsicum (OC) pepper spray. Major alleged that the use of the spray in a training exercise worsened existing bronchial difficulties and caused her permanent injury. On July 19, 2011, the district court granted partial summary judgment to SEC on the grounds that Major failed to create a material issue of fact on whether her injuries were a known or foreseeable risk prior to March 2008, the date of sale to IDOC. In a motion to reconsider, Major submitted a second

1

affidavit from her expert, Dr. Yost, which was declared a sham affidavit by the district court in its denial of the motion. The district court later granted summary judgment to SEC on the sole remaining issue, the viability of Major's claim under the Federal Hazardous Substances Act (FHSA). We vacate the judgment of the district court and remand for proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Billie Jo Major was employed by IDOC beginning in July 2004. Major was assigned to the Idaho Maximum Security Institution from July 2004 to July 2006 and from August 2007 to March 2008. She worked at the South Boise Women's Correctional Facility in the interim. According to Major, she suffered periodic bouts of respiratory illness before and during her employment at IDOC. While employed at IDOC, Major participated in several training exercises that involved exposure to pepper spray.

Pertinent to this action is the training that occurred on March 3, 2008, where Major was exposed to spray from SEC's MK-9 Fogger pepper spray. The MK-9 Fogger produces a widely dispersed aerosol designed to irritate and inflame the respiratory tract. During the training, bursts of pepper spray were sprayed into a jail cell before trainees would enter to experience the effects of the aerosol. The training lasted approximately two and a half hours. Major alleges that when the training took place she was on light duty and suffering from bronchitis. After the training, Major states that her respiratory problems worsened and she developed a chronic cough. According to Major, her health issues prevented her from working, caring for herself, or engaging in other activities.

Major filed a complaint against SEC on February 24, 2010, that contained three causes of action. Major alleged that: (1) the MK-9 Fogger spray was unreasonably dangerous, the proximate cause of her injuries, and SEC was subject to strict product liability; (2) that the spray's labeling did not provide adequate warnings or instructions for safe use and; (3) SEC breached express warranties to the consumer.

On April 22, 2011, SEC filed a motion for summary judgment on the grounds that Major would be unable to present evidence that SEC knew or should have known of the pepper spray's dangers. Major filed a cross motion for partial summary judgment on June 10, 2011. Major's cross motion contained an affidavit from Dr. Garold Yost, a professor of pharmacology and toxicology. Dr. Yost's affidavit stated that SEC's pepper spray caused Major "to suffer acute

adverse health responses and greatly exacerbated her underlying respiratory diseases." SEC filed a motion to strike portions of Dr. Yost's affidavit, which was heard with the cross motions for summary judgment in a hearing on July 14, 2011.

After hearing argument on the motions, the district court issued its Order Re: Pending Motions for Summary Judgment and to Strike Affidavit of Garold Yost. In it, the district court granted SEC's motion for summary judgment on the grounds that Major failed to show a genuine issue of fact regarding chronic injury that resulted from exposure to the pepper spray. The district court also denied Major's cross motion for summary judgment and SEC's motion to strike Dr. Yost's affidavit. The district court did not decide the issue of whether Major has any viable claim under the FHSA.

SEC filed its second motion for summary judgment for the FHSA issue on July 22, 2011. On July 26, 2011, Major filed a motion and memorandum for reconsideration of the district court's summary judgment order. The motion was supported by a second affidavit of Dr. Yost. In response, SEC filed a motion to strike portions of Dr. Yost's second affidavit on the grounds that it directly contradicts the doctor's deposition testimony without explanation. A hearing on these three motions was heard on September 15, 2011. After hearing argument from the parties, the district court granted SEC's second motion for summary judgment and its motion to strike Dr. Yost's second affidavit, and denied Major's motion for reconsideration. The district court struck Dr. Yost's second affidavit on the grounds that the second affidavit contradicted the expert's deposition testimony without explanation and denied the motion for reconsideration because it was based on this affidavit.

SEC filed a motion for clarification on September 20, 2011, to determine whether any of Major's issues survived the two grants of summary judgment. Specifically, SEC sought clarity on whether a claim for Major's acute injuries had survived. The district court treated this as a motion for summary judgment. On October 4, 2011, Major filed a second motion for reconsideration on the issue of whether a material issue of fact exists as to the foreseeability of acute injury. Argument on these motions was heard on October 17, 2011. The district court concluded that the undisputed facts in the record led to only one conclusion, that the pepper spray's warning label provided an adequate notice to Major regarding the acute effects of the spray. On these grounds, the district court granted summary judgment to SEC and denied Major's second motion for reconsideration. A final judgment pursuant to these orders was

3

issued on October 20, 2011. Major filed a third motion for reconsideration accompanied by a third affidavit from Dr. Yost, which was denied by the district court. Major timely filed a notice of appeal with this Court on November 23, 2011.

## II. ISSUES ON APPEAL

1. Whether the district court erred by granting summary judgment to SEC.
2. Whether the district court erred by striking Dr. Yost's second affidavit as a sham affidavit.
3. Whether either party is entitled to attorney fees and costs on appeal.

## III. STANDARD OF REVIEW

> When reviewing an order for summary judgment, the standard of review for this Court is the same standard as that used by the district court in ruling on the motion. Summary judgment is appropriate if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). Disputed facts should be construed in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party.

*Fuller v. Callister*, 150 Idaho 848, 851, 252 P.3d 1266, 1269 (2011) (quoting *Castorena v. Gen. Elec.*, 149 Idaho 609, 613, 238 P.3d 209, 213 (2010)). "However, the nonmoving party cannot rely on mere speculation, and a scintilla of evidence is insufficient to create a genuine issue of material fact." *Bollinger v. Fall River Rural Elec. Coop., Inc.*, 152 Idaho 632, 637, 272 P.3d 1263, 1268 (2012).

## IV. ANALYSIS

**A. The district court erred by granting summary judgment to SEC.**

On appeal, Major argues that the district court erred when it granted SEC's first motion for summary judgment on her failure to warn claim. Specifically, Major argues that the affidavits from Dr. Yost presented a genuine issue of material fact as to whether SEC knew or should have known that the MK-9 Fogger pepper spray posed a danger of causing the kind of respiratory injury alleged by Major. SEC argues that Dr. Yost's first affidavit did not create a genuine issue of material fact because it "focused more on causation of injury, rather than foreseeability of risk, and on an acute injury which Major did not have, instead of the chronic injury that is the basis for her claim for damages."

> Failure to warn can be a basis for recovery in a products liability action, whether alleged under a theory of strict liability in tort or negligence. A product is

4

defective if the defendant has reason to anticipate that danger may result from a particular use of his product and fails to give adequate warnings of such danger.

*Puckett v. Oakfabco, Inc.*, 132 Idaho 816, 823, 979 P.2d 1174, 1181 (1999) (internal quotations omitted). "As is well established, a supplier has no duty to warn where the use made of a product was not known or reasonably foreseeable to the manufacturer or seller. The factual question of foreseeability is for the jury to determine." *Sliman v. Aluminum Co. of Am.*, 112 Idaho 277, 283, 731 P.2d 1267, 1273 (1986) (internal citations omitted). "While sellers need not be clairvoyant, they are held to the knowledge and experience of experts in their fields. Knowledge of the product's risks based on reliable and obtainable information is imputed to the seller." *Toner v. Lederle Labs.*, 112 Idaho 328, 338, 732 P.2d 297, 307 (1987) (internal citations omitted).

In its decision, the district court found that Major failed to present evidence that her alleged injuries were foreseeable:

> Mr. Yost in response to the questions in the deposition . . . clearly indicates that he cannot point to any existing studies that would have put Security Equipment Corporation on notice that . . . it was a foreseeable danger to people using this product.

SEC argues on appeal that Dr. Yost's conclusions are unsupported by the state of scientific knowledge in 2008. Based in part on the lack of supporting evidence, the district court concluded that Major failed to meet her burden:

> In other words . . . this affidavit does not clearly tee up the issue of – does not create a material dispute of fact because there is not a direct dispute between Dr. Reilly other than for him to say I don't agree with him. But he doesn't come back and say that it's undisputed or that there are these studies or something that says there is this risk of chronic disease as a result to the exposure.

On appeal, the pertinent analysis is whether Dr. Yost's affidavits and deposition create a genuine issue of material fact regarding the foreseeability of chronic injury.

    1. Dr. Yost's first affidavit and deposition testimony.

In his first affidavit, Dr. Yost concluded that in his expert opinion, within a reasonable degree of scientific certainty, SEC's pepper spray caused Major "to suffer acute adverse health responses and greatly exacerbated her underlying respiratory diseases."

This opinion was based in part on the following excerpts from the affidavit:

4. According to the records and other documents I reviewed, after the Plaintiff completed the March 2008 OC Spray training session, she was not able to return to work due to a severe chronic cough and other respiratory related disease. The

records also indicated the Plaintiff suffered a much milder form of chronic cough prior to the March 2008 training, and it was only after the exposure in that training that her condition worsened to the point that she was no longer able to work, whether at IDOC or in other similar employment settings.

5. I have expressed my expert opinions as to the cause of the Plaintiff's acute adverse health responses to the OC Spray, and how it greatly exacerbated her underlying respiratory diseases. Attached hereto as Exhibit B is a true and correct copy of those opinions.

. . .

6. Based on my review of the above cited articles and my education, training, research and knowledge of the scientific literature in the relevant area, it is my opinion that the risks to the respiratory tract posed by exposure to SEC's SABRE Red law enforcement 10% OC Spray (MK-9 Fogger) were known and foreseeable risks at the time SEC sold its product to IDOC.

7. It is known now and it was known prior to 2008 that people with asthma and chronic cough are more sensitive to pepper spray then [sic] other people with normal respiratory function. People with greater sensitivity to capsaicin would be expected to have increased TRPV1 receptor populations. Other important TRP channels exist, and several of them, particularly TRPA1, are activated by irritants, such as those that exist in cigarette smoke, and other environmental sources. Thus, it is reasonable to expect the multiple TRP channels act in concert with each other to result in higher acute respiratory responses to a multitude of respiratory irritants, particularly in people with increased sensitivity to pepper sprays.

Dr. Yost's first affidavit also contained a list of studies from which his conclusions were drawn. SEC argues that although Dr. Yost listed several studies, his affidavit did not cite from or supply copies of those studies.

Additionally, SEC argues that Dr. Yost's comments only address acute injury, not the chronic injury alleged by Major. Dr. Yost's initial report, which was attached as an exhibit to his affidavit, more clearly stated the possibilities of chronic toxicity from OC exposure:

[T]he biological responses to OC products are caused predominately by binding capsaicinoids to Transient Receptor Potential (TRP) calcium channels. The population of TRP channels in tissues is regulated by multiple exposures, and the number and activities of TRP channels usually determine the responses to chronic exposures that lead to sensitization or desensitization from multiple exposures in multiple organ systems. One highly characterized toxicity of capsaicinoids is the exacerbation of chronic cough, and people with this respiratory disease are up to 30-times more sensitive to capsaicin-induced cough.

Given the standard of review of making all reasonable inferences in favor of Major, Dr. Yost's first affidavit addresses chronic injury that results from OC exposure. Major's complaint alleged

that the exposure increased the severity of her pre-existing, chronic respiratory illness. It is thus reasonable to infer that Dr. Yost's conclusion that SEC's pepper spray caused Major "to suffer acute adverse health responses and greatly exacerbated her underlying respiratory diseases," refers to both an acute and a chronic response to the pepper spray. In addition to his first affidavit and deposition, Dr. Yost offered two more affidavits into evidence.

2. <u>Dr. Yost's third affidavit.</u>

Although the district court struck Dr. Yost's second affidavit from the record and did not consider it below, it took his third affidavit into consideration. The third affidavit was provided in support of Major's motion for reconsideration of the district court's order to strike the second affidavit. A significant portion of the third affidavit is used to explain any real or perceived inconsistencies between Dr. Yost's prior affidavits and his deposition testimony. But the third affidavit also provides more detailed explanations for Dr. Yost's opinion on the pertinent issues:

> As I explained in my deposition and in my affidavits, the weight of evidence is that long-term chronic adverse health effects can occur from exposure to OC for a certain population under certain circumstances. As I have repeatedly said, there is an entire body of research relating to the physiological, biological, toxicological, and pharmaceutical effects of capsaicinoids on human tissues. The weight of that evidence strongly suggests that exposure to capsaicinoids can cause long-term adverse health effects in persons who are already sensitized to capsaicinoids, whether it be because of pre-existing respiratory injury or because of prior exposures that up-regulated the TRPV1 receptor.

The affidavit also discusses the state of scientific knowledge in 2008:

> The fact that there was [sic] not any definitive studies showing long-term adverse health effects does not detract from the reality that, prior to 2008, enough was understood about the toxicology of capsaicinoids that it was understood that capsaicinoids are irritants that are toxic to sensory neurons under certain circumstances. . . . [I]t was understood that biological changes occurring within human and animal tissues can be of short duration, long duration, or even permanent.

These statements are supplemented through citations to studies and are used to support Dr. Yost's ultimate conclusion that:

> the scientific literature and studies in existence prior to 2008 [were] such that when viewed as a body of literature and human and animal studies, it was known that a product such as SEC's MK-9 Fogger posed a risk of both acute and chronic respiratory injury such as that described in Ms. Major's medical records.

When all reasonable inferences that can be drawn from the record are construed in favor of Major, Dr. Yost's first affidavit, deposition, and third affidavit create a genuine issue of

material fact. The third affidavit in particular identifies the injuries alleged by Major and the possibility that SEC's pepper spray could have caused them. The third affidavit is also supported by—and cites directly from—scientific research that was available when SEC sold the MK-9 Fogger to the IDOC. Therefore, Major has demonstrated a genuine issue of material fact to survive SEC's first motion for summary judgment. We hold that the district court improperly granted summary judgment to SEC on whether the company had a duty to warn Major of possible chronic injury.

**B. The district court erred by striking Dr. Yost's second affidavit as a sham affidavit.**

Major also appeals the district court's decision to grant SEC's motion to strike Dr. Yost's second affidavit in the September 15, 2011 hearing. The district court based its decision on the finding that Dr. Yost's testimony changed, and that the second affidavit still did not create a dispute of material fact. Major argues that the district court misinterpreted the second affidavit and that the deposition only clarifies earlier testimony.

1. Standard of Review.

"The admissibility of evidence contained in affidavits and depositions in support of or in opposition to a motion for summary judgment is a threshold matter to be addressed before applying the liberal construction and reasonable inferences rule to determine whether the evidence creates a genuine issue of material fact for trial." *Fragnella v. Petrovich*, 153 Idaho 266, 271, 281 P.3d 103, 108 (2012). "This Court applies an abuse of discretion standard when determining whether testimony offered in connection with a motion for summary judgment is admissible." *Gem State Ins. Co. v. Hutchison,* 145 Idaho 10, 15, 175 P.3d 172, 177 (2007). "A trial court does not abuse its discretion if it (1) correctly perceives the issue as discretionary, (2) acts within the bounds of discretion and applies the correct legal standards, and (3) reaches the decision through an exercise of reason." *O'Connor v. Harger Constr., Inc.*, 145 Idaho 904, 909, 188 P.3d 846, 851 (2008).

2. Whether the district court erred by striking Dr. Yost's second affidavit as a sham affidavit.

This Court has never adopted the sham affidavit doctrine. *See Arregui v. Gallegos-Main*, 153 Idaho 801, 805, 291 P.3d 1000, 1004 (2012). However, the Court of Appeals has previously stated that an affidavit which directly contradicts prior testimony may be disregarded as a sham affidavit on a summary judgment motion. *See In re Estate of Keeven*, 126 Idaho 290, 298, 882 P.2d 457, 465 (Ct. App. 1994). "[A]ll tribunals inferior to the Court of Appeals are obligated to

abide by decisions issued by the Court of Appeals." *State v. Guzman*, 122 Idaho 981, 986, 842 P.2d 660, 665 (1992). Therefore, to the extent that the district court was following precedent from the Court of Appeals, the district court did not err in striking the affidavit.

In *Keeven*, the statement of the sham affidavit doctrine is dicta—rather than an adoption of the doctrine—since the affidavit in that case was not a sham and the rule did not apply. 126 Idaho at 298, 882 P.2d at 465. We have previously held that "[t]he issues of credibility should not be resolved at summary judgment unless the record is clear that credence cannot be given to the expert's affidavit." *Mains v. Cach*, 143 Idaho 221, 225, 141 P.3d 1090, 1094 (2006). The circumstances in this case are similar to those in *Mains*. In *Mains*, the plaintiff brought a medical malpractice claim against a neurosurgeon, Dr. Cach. *Id.* at 222, 141 P.3d at 1091. Mains alleged that she experienced severe pain following a surgery performed by Dr. Cach, and offered expert testimony from Dr. Farzad Massoudi in support of her claim. *Id.*, at 223, 141 P.3d at 1092. The district court declined to admit Dr. Massoudi's testimony into evidence, having found that his affidavit contradicted testimony he gave in an earlier deposition. *Id.*, at 224, 141 P.3d at 1093. The district court then granted summary judgment to Dr. Cach. *Id.*

This Court summed up the main issue on appeal:

> The problem with this case is simple. The testimony Massoudi gave in his deposition appears to contradict his subsequent affidavit. The testimony appears to say that he did not inquire as to the standard of care at the relevant time. The affidavit says that he did. Standing by itself, the affidavit would be sufficient to defeat summary judgment. The question is whether the affidavit should be disregarded because of Massoudi's prior deposition testimony.

*Id.* at 225, 141 P.3d at 1094. This Court then reversed the district court's grant of summary judgment on the grounds that a reasonable inference could be made showing that Dr. Massoudi's affidavit and deposition were consistent:

> Certainly a contrary determination could be made by a trier of fact, but that type of weighing of the evidence is not appropriate for summary judgment. It is not clear that Massoudi failed to establish the relevant time frame for his opinion. Consequently, summary judgment should not have been granted.

*Id.* at 226, 141 P.3d at 1095.[1]

---

[1] Additionally, in *Edmunds v. Kraner*, this Court stated the following:

> Idaho law specifically contemplates that expert testimony can change after the initial disclosure. Idaho Rule of Civil Procedure 26(e)(1)(B) requires that litigants supplement discovery responses as to "the identity of each person expected to be called as an expert witness at trial, the subject matter on which the person is expected to testify, and the substance of the person's testimony."

Here, the district court struck the affidavit, in part, because several answers provided by Dr. Yost in his deposition contradicted the more direct language in the second affidavit. Specifically, the district court found that the affidavit unequivocally stated that SEC's pepper spray posed a known risk of both acute and chronic respiratory injury, and that Dr. Yost's deposition contained a contradictory statement regarding acute injury. When asked whether exposure to OC is generally deemed to cause temporary effects, Dr. Yost's deposition states that this is a fair statement.

In this instance and others discussed by SEC, it would appear that the district court conflated the term "generally" with the words "always" or "only." Dr. Yost's affirmation that OC generally causes a temporary effect does not conflict with the affidavit's statement that the substance has a known risk for acute and chronic injury. Similar to *Mains*, it can be reasonably inferred that Dr. Yost was making very fine distinctions that do not contradict as much as they refine and clarify. Though this caused some confusion, other examples seem to demonstrate the fine lines involved. SEC points to an exchange where Dr. Yost is asked whether any literature has explored the effect of chronic exposure to OC. SEC offers this as proof that Dr. Yost's second affidavit contradicts this testimony. However, SEC clearly asked about chronic exposure, not chronic injury caused by exposure.

This Court has never adopted the sham affidavit doctrine. We roundly criticized the doctrine in *Mains* because a sham affidavit finding necessarily turns on a credibility finding as well as a finding of bad faith. That is beyond the power of the trial courts at the summary judgment phase.

---

> This Court has held that this rule unambiguously imposes a continuing duty to supplement responses to discovery with respect to the substance and subject matter of an expert's testimony where the initial responses have been rejected, modified, expanded upon or otherwise altered in some manner. In fact, litigants are subject to sanctions, including the exclusion of expert testimony, when they have failed to supplement an expert's opinion.

142 Idaho 867, 874, 136 P.3d 338, 345 (2006) (internal citations omitted). In *Mains*, this Court addressed *Edmunds* in this context:

> *Edmunds* is not directly on point, but it is instructive. It indicates that expert testimony may change and should not be discounted simply because it is different from prior testimony, in which the expert referred to in the affidavit filed on behalf of the plaintiff denied providing any information regarding the standard of care to the plaintiff's expert. This Court held that the district court abused its discretion in holding that the affidavit did not raise genuine issues of fact sufficient to preclude summary judgment.

*Mains*, 143 Idaho at 225, 141 P.3d at 1094 (internal citations omitted).

Although the trial court followed Court of Appeals precedent, it is however an abuse of discretion to misinterpret an affidavit or deposition. That is what has happened here. The deposition, first affidavit, and third affidavit of Dr. Yost create material issues of fact. The issues of bad faith or unreasonableness of litigation can be addressed through I.R.C.P. 56(g) or other attorney fee provisions.

**C.  Neither party is entitled to attorney fees and costs on appeal.**

Major and SEC both argue that they are entitled to attorney fees on appeal pursuant to I.C. § 12-121. Under this section a judge may award reasonable attorney's fees to the prevailing party in a civil action. I.C. § 12-121. Because we will only award attorney fees on appeal "when the court is left with the abiding belief that the appeal was brought, pursued, defended frivolously, unreasonably or without foundation," we award neither party attorney fees in this appeal. *Conley v. Whittlesey*, 133 Idaho 265, 274, 985 P.2d 1127, 1136 (1999).

## V. CONCLUSION

We hold that the district court erred in granting SEC's first motion for summary judgment. Further, we hold that the district court erred in striking Dr. Yost's second affidavit. We vacate the judgment of the district court and remand for proceedings consistent with this opinion. We award neither party attorney fees on appeal. Costs to Major on appeal.

Justices EISMANN, J. JONES, W. JONES and HORTON, **CONCUR.**

11