## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 44129

| | | |
|---|---|---|
| WHITNEY L. BRIGHT, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| v. | ) | |
| | ) | Boise, May 2017 Term |
| ROMAN MAZNIK and NATALYA K. | ) | |
| MAZNIK, husband and wife, | ) | 2017 Opinion No. 69 |
| | ) | |
| Defendants-Respondents, | ) | |
| and | ) | Filed: June 20, 2017 |
| | ) | |
| JAMES R. THOMAS and KATHERINE L. | ) | Karel A. Lehrman, Clerk |
| THOMAS, | ) | |
| | ) | |
| Defendants. | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Thomas J. Ryan, District Judge.

District court judgment, <u>affirmed</u>.

Evans, Keane, Boise, for appellant. Jed W. Manwaring argued.

Montgomery Law Offices, Boise, for respondents. Gary L. Montgomery argued.

_____

BURDICK, Chief Justice.

Whitney L. Bright appeals from the Canyon County district court's grant of summary judgment to Roman and Natalya Maznik. The Mazniks are property owners who leased an apartment to James and Katherine Thomas, owners of a Belgian Shepherd. When Bright visited the Thomas' apartment in an effort to collect on a debt, the Thomas' dog attacked her. Bright then lodged a complaint against the Mazniks, alleging various tort claims arising from the attack. The district court granted the Mazniks' motion for summary judgment, and we now affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The Mazniks are owners and landlords of residential rental properties located in Canyon County. In November 2005, the Mazniks hired Cashflow Management (Cashflow) to manage

1

their rentals. Cashflow, as property manager, ensures that the Mazniks' rentals are habitable, handles everyday maintenance, solicits and screens prospective tenants, leases the rentals, and makes monthly, in-person visits to the rentals to collect rent.

In August 2008, the Thomases applied to lease an apartment from the Mazniks. On their rental application, the Thomases disclosed that they had a "B. Shepherd"[1] that weighed thirty-five pounds. Cashflow reviewed the Thomas' rental application. As part of that review, Cashflow contacted the Thomas' former landlord to ask about "dog issues"—*i.e.*, whether the dog was a problem, had damaged the property, or ever caused excessive noise. Cashflow could not recall the details of that conversation, but apparently no concerns arose because Cashflow approved the Thomas' application. When concerns did arise in the application review process, Cashflow explained that those issues were noted on the application and rejection would follow.

Cashflow routinely rented to dog owners, and so the Thomas' dog did not cause concern. Cashflow explained that it rented to dog owners because:

> [W]e have gone [sic] through a phase in our company where we did try to put people who didn't have pets in. And [we] found that after the fact people move pets in, anyway. Then it was difficult to collect on pet deposits and it was difficult to enforce the lease. And to avoid having that headache we became more liberal.

To be sure, as a property management company, Cashflow "honor[ed] what the owners want." But the Mazniks were flexible and "left that judgment up to [Cashflow]."

Before January 21, 2014, neither the Mazniks nor Cashflow ever received any complaints about the Thomas' dog. That day, however, the Thomas' dog attacked Bright when she visited the Thomas' apartment concerning a debt Mr. Thomas owed. The Thomas' dog lunged past Mr. Thomas when he answered the door, biting Bright on her arm and leg. Bright eventually retreated inside the Thomas' apartment until Mr. Thomas could place the dog under control.

In September 2014, Bright sued the Thomases and the Mazniks, alleging various tort claims. She obtained a $25,000 default judgment against the Thomases. The Mazniks, by contrast, moved for and obtained summary judgment. Bright brings this timely appeal.

## II.    ISSUES ON APPEAL

1.    Did the district court err by granting summary judgment to the Mazniks on Bright's negligence *per se* claim?

---

[1] There is an immaterial dispute as to whether the Thomas' dog was a Belgian Shepherd or a German Shepherd. Because the majority of the record identifies the Thomas' dog as a Belgian Shepherd, we follow suit.

2. Did the district court err by granting summary judgment to the Mazniks on Bright's liability for domestic animals claim?

3. Did the district court err by granting summary judgment to the Mazniks on Bright's remaining claims?

## III. STANDARD OF REVIEW

This Court reviews a summary judgment order under the same standard the district court used in ruling on the motion. *Kolln v. Saint Luke's Reg'l Med. Ctr.*, 130 Idaho 323, 327, 940 P.2d 1142, 1146 (1997). That is, summary judgment is appropriate if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). We construe disputed facts in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party. *Major v. Sec. Equip. Corp.*, 155 Idaho 199, 202, 307 P.3d 1225, 1228 (2013).

*Mitchell v. State*, 160 Idaho 81, 84, 369 P.3d 299, 302 (2016).[2]

## IV. ANALYSIS

**A.    The district court properly granted summary judgment to the Mazniks on Bright's negligence *per se* claim.**

The district court granted summary judgment on Bright's negligence *per se* claim, reasoning that Bright had not shown a predicate statutory violation. "[I]n Idaho, it is well established that statutes and administrative regulations may define the applicable standard of care owed, and that violations of such statutes and regulations may constitute negligence *per se.*" *Sanchez v. Galey*, 112 Idaho 609, 617, 733 P.2d 1234, 1242 (1986). "A court may adopt 'as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation[.]' " *Brizendine v. Nampa Meridian Irr. Dist.*, 97 Idaho 580, 586, 548 P.2d 80, 86 (1976) (quoting Restatement (Second) of Torts § 286 (1965)). "The effect of establishing negligence *per se* through violation of a statute is to conclusively establish the first two elements of a cause of action in negligence." *Slade v. Smith's Mgmt. Corp.*, 119 Idaho 482, 489, 808 P.2d 401, 408 (1991).

Bright's negligence *per se* claim implicates the interpretation of Idaho Code section 25-2805(2). That statute provides:

---

[2] The district court granted summary judgment in 2015. Effective July 1, 2016, Idaho Rule of Civil Procedure 56 was amended. The relevant portion of the rule now provides: "The court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a).

3

Any dog which, when not physically provoked, physically attacks, wounds, bites or otherwise injures any person who is not trespassing, is vicious. It shall be unlawful for the owner or for the owner of premises on which a vicious dog is present to harbor a vicious dog outside a secure enclosure. A secure enclosure is one from which the animal cannot escape and for which exit and entry is controlled by the owner of the premises or owner of the animal. Any vicious dog removed from the secure enclosure must be restrained by a chain sufficient to control the vicious dog. Persons guilty of a violation of this subsection, and in addition to any liability as provided in section 25-2806, Idaho Code, shall be guilty of a misdemeanor. For a second or subsequent violation of this subsection, the court may, in the interest of public safety, order the owner to have the vicious dog destroyed or may direct the appropriate authorities to destroy the dog.

I.C. § 25-2805(2) (2015).[3] "The interpretation of a statute is a question of law that the Supreme Court reviews de novo." *Hayes v. City of Plummer*, 159 Idaho 168, 170, 357 P.3d 1276, 1278 (2015). Statutory interpretation begins with the statute's plain language. *State v. Burnight*, 132 Idaho 654, 659, 978 P.2d 214, 219 (1999). That language "is to be given its plain, obvious and rational meaning." *Id.* If that language is clear and unambiguous, "the Court need merely apply the statute without engaging in any statutory construction." *Id.*

The district court concluded Bright had failed to establish a predicate violation of section 25-2805(2). Specifically, the district court reasoned that the Thomas' dog was not a "vicious" dog under section 25-2805(2) since it had never attacked, bitten, or wounded a person. This represents the "one free bite" approach. *See Borns ex rel. Gannon v. Voss*, 70 P.3d 262, 270 (Wyo. 2003) (discussing the one free bite approach). Under the one free bite approach, notice of the dog's viciousness is a condition precedent to liability; as a result, liability is not imposed for the first attack, bite, or wound because that is what gives rise to notice of the dog's viciousness. *See id.*

---

[3] Effective July 1, 2016, the statute was amended to read:

Any dog that physically attacks, wounds, bites or otherwise injures any person who is not trespassing, when such dog is not physically provoked or otherwise justified pursuant to subsection (3) of this section or as set forth in section 25-2808, Idaho Code, subjects either its owner or any person who has accepted responsibility as the possessor, harborer or custodian of the dog, or both, to civil liability for the injuries caused by the dog. A prior determination that a dog is dangerous or at-risk, or subject to any court order imposing restrictions or requirements pursuant to the provisions of this section, shall not be a prerequisite to civil liability for injuries caused by the dog.

I.C. § 25-2810(10).

The district court is correct that Bright has not shown a predicate violation of section 25-2805(2), although we affirm on alternative reasoning. *See State v. Mann*, No. 43745, 2017 WL 1533655, at \*4 (Apr. 28, 2017) ("This Court may affirm decisions of a district court based on different theories then applied by the district court."). To show the Mazniks violated section 25-2805(2), Bright had the burden to prove that they "harbor[ed]" a dog on the property. Because the term "harbor" is not defined in the statute, it will be given its plain, ordinary meaning. *Arnold v. City of Stanley*, 158 Idaho 218, 221, 345 P.3d 1008, 1011 (2015). The verb form of harbor is defined as "to receive clandestinely and conceal," or, as relevant here, "to have (an animal) in one's keeping." *Webster's Third New Int'l Dictionary* 1031 (1969). Thus, "harbor" contemplates "protecting" an animal, or "undertak[ing] to control [its] actions[.]" *Markwood v. McBroom*, 188 P. 521, 522 (Wash. 1920); *see also Hagenau v. Millard*, 195 N.W. 718, 718 (Wis. 1923) (explaining that "the word 'harbor' in its meaning signifies protection").

The record does not show that the Mazniks harbored the Thomas' dog on the property, regardless of whether that dog was "vicious." The record contains no evidence that the Mazniks "receive[d] clandestinely and conceale[d]" the Thomas' dog. Nor does the record show that the Mazniks "ha[d] (an animal) [*i.e.*, the Thomas' dog] in [their] keeping." It is undisputed that the Thomases had their dog in their keeping at all times. The Mazniks did nothing in the way of undertaking to control the Thomas' dog. The lease made clear that the Thomases had responsibility to control their dog. The lease required the Thomases to, among other things: (1) "[k]eep the pet under control at all times"; (2) "[k]eep the pet restrained, but not tethered, when it is outside Resident's dwelling"; (3) "[n]ot leave the pet unattended for any unreasonable periods"; and (4) "[k]eep the pet from causing any annoyance or discomfort to others . . . ." Bright apparently seeks to hold the Mazniks liable on this claim merely because they owned the property, but property ownership alone does not constitute harboring of an animal. Restatement (Second) of Torts § 514, cmt. a (1977) ("[T]he possession of the land on which the animal is kept, even when coupled with permission given to a third person to keep it, is not enough to make the possessor of the land liable as a harborer of the animal."). Summary judgment on Bright's negligence *per se* claim is affirmed.

5

**B.** **The district court properly granted summary judgment to the Mazniks on Bright's liability for domestic animals claim.**

The district court granted summary judgment on Bright's liability for domestic animals claim, concluding the Mazniks owed no duty to protect Bright from the Thomas' dog. In the context of liability for domestic animals, duty is governed by

> a rule of law lacking the ordinary care scienter requirement of negligence when owners of domestic animals know of vicious tendencies. In cases where a domestic animal is not trespassing, the owner of the animal is liable for injuries caused if the owner knew or should have known of the animal's vicious or dangerous tendencies.

*Boswell v. Steele*, 158 Idaho 554, 560, 348 P.3d 497, 503 (Ct. App. 2015) (citing *McClain v. Lewiston Interstate Fair & Racing Ass'n*, 17 Idaho 63, 79, 104 P. 1015, 1020 (1909)); *see also Braese v. Stinker Stores, Inc.*, 157 Idaho 443, 446, 337 P.3d 602, 605 (2014) ("[A]n owner is liable for injuries caused by a domesticated animal where the owner knew or should have known of the animal's vicious or dangerous propensity." (quotation marks and citation omitted)).

A property owner may have a duty to protect others from an animal if the property owner had notice of the animal's vicious or dangerous propensity, even if the property owner is not the animal's owner. For instance, in *Braese*, a customer visited a convenience store with his dog. 157 Idaho at 444, 337 P.3d at 603. During the customer's visit, his dog "jumped up hitting [the plaintiff] in the chest with her front paws." *Id.* at 445, 337 P.3d at 604. The plaintiff sued the store owner. *Id.* The district court granted summary judgment to the store owner, and this Court affirmed on appeal. *Id.* at 446, 337 P.3d at 605. As this Court emphasized, no evidence showed "that either the manager or cashier knew or should have known that [the dog] would jump up on a customer in the store." *Id.* Indeed, the manager testified that this particular dog had visited the store several times, and the manager had no reason to be concerned about the dog. *Id.* By contrast, when "uncontrollable" dogs visited, the manager made customers escort their dogs outside. *Id.* Absent any evidence that the store owner knew or should have known of the dog's dangerous or vicious propensity, this Court affirmed that summary judgment was properly granted to the store owner. *Id.*

Here, summary judgment on Bright's liability for domestic animals claim was proper. As in *Braese*, it is undisputed that the Mazniks had neither actual nor constructive notice of the dog's dangerous or vicious propensity. Bright argues the Mazniks had notice of the dog's dangerous or vicious propensity because they "failed . . . to investigate to Belgian Shepherd

6

breed to find that is a regularly used guard dog. A simple internet search would have revealed the aggressive nature of this breed." This argument is overbroad and implicates nothing specific about this particular dog. This argument overlooks that, in Idaho, "all dogs, regardless of breed or size, are presumed to be harmless domestic animals." *Braese*, 157 Idaho at 445, 337 P.3d at 604 (quoting 4 Am. Jur. 2d *Animals* § 75 (2007)).

Bright further argues the Mazniks had notice of the dog's dangerous or vicious propensity because their agent, Trina Neddo of Cashflow, "personally visited the home each month to pick up the rent payment and therein observed the confining conditions of the large Dog along with the wild barking and aggressive nature of the Dog." This argument overstates Neddo's testimony. Neddo testified that she collected monthly rent from the Mazniks "many times[.]" While doing so, she observed the Thomas' dog. At times, she observed the dog through a window while it was inside, but at other times, she observed the dog while it was outside on a leash. The dog regularly barked when Neddo knocked on the door to collect rent. Neddo characterized the bark as "protective," but indicated that she "d[id]n't know that [she] would define it as aggressive." In Neddo's thirteen years of experience as a property manager, barking was a "typical response" by tenants' dogs. Neddo further indicated that the Thomases had a "Beware of Dog" sign posted out front, although she was unable to recall whether that sign was posted before or after the bite at issue. Either way, Neddo found that sign insignificant. As she explained:

> Q. When you see a sign of one of your tenant's rentals with a Beware of Dog sign in the window what does that say or not say to you?
> A. Typically, I see it in my single women's homes. They will put it [up]. Even if they have the smallest littlest dog. But I think it is more of a security for people who want to, you know, protect themselves against maybe intruders or someone looking to break in.
> Q. So in your mind it is not a notice that there is a dangerous dog on-site?
> A. Not my experience. Typically it is there for a false protection.

This testimony does not raise a triable issue of fact concerning whether the Mazniks had notice of the dangerous or vicious propensity of the Thomas' dog. As the district court found, "Neddo's statements make it clear that she had no actual knowledge Tenants' dog was capable of attacking someone. Further, Bright has failed to establish any evidence that Neddo was wrong in her belief, or that she should have known the Tenants' dog had a dangerous propensity."

Bright points to an affidavit from the Thomas' neighbor, Janette Endecott. Endecott testified that the dog "would bark wildly at me and lunge hard against its leash toward me." But

Endecott never testified that she reported these instances to the Mazniks or Cashflow. As Neddo testified, "[t]here have been no complaints against the Thomases [sic] dogs from any of the neighbors . . . ." In fact, in her thirteen years of property management, Neddo "never received any complaints of aggressive animals . . . ." Endecott's testimony does not raise a triable issue of fact on the issue of the Mazniks' notice.

Accordingly, Bright has not raised a triable issue of fact on her liability for domestic animals claim because it is undisputed that the Mazniks had neither actual nor constructive notice of the dog's dangerous or vicious propensity.

**C.     The district court properly granted summary judgment to the Mazniks on Bright's remaining claims.**

While the district court's summary judgment order concluded the Mazniks owed no duty under the theories of common law negligence, voluntary assumption of duty, and premises liability, it is not clear whether Bright seeks to appeal the district court's ruling on these bases. She never cogently addresses these issues with argument or authority. These issues are therefore waived. *Cf. Liponis v. Bach*, 149 Idaho 372, 374, 234 P.3d 696, 698 (2010) (explaining that argument is waived if "not supported by any cogent argument or authority" in the opening brief).

## V.     CONCLUSION

We affirm summary judgment to the Mazniks. We do not award attorney fees on appeal since neither side requests them. We award costs on appeal to the Mazniks.

Justices EISMANN, JONES, HORTON and BRODY, **CONCUR.**

8