IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 41882

| | |
|---|---|
| RYAN M. MITCHELL, ) | |
| ) | |
| Plaintiff-Appellant, ) | |
| ) | |
| v. ) | |
| ) | Twin Falls, November 2015 |
| STATE OF IDAHO, a governmental entity, ) | |
| and SUSAN SIMPSON, as Conservator and ) | 2016 Opinion No. 24 |
| Guardian of GERALD DURK SIMPSON, ) | |
| ) | Filed: March 3, 2016 |
| Defendants-Respondents, ) | |
| ) | Stephen W. Kenyon, Clerk |
| and ) | |
| ) | |
| DOES 1-25, ) | |
| ) | |
| Defendants. ) | |

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Bannock County. Hon. Robert C. Naftz, District Judge.

District court order granting summary judgment on a victims' rights claim and negligence claim, affirmed in part, reversed in part and remanded.

Mauk & Burgoyne and Fisher Rainey Hudson, Boise, for appellant. Rebecca Rainey argued.

Benoit, Alexander, Harwood & High, LLP, Twin Falls, for respondent. Bren E. Mollerup argued.

_____

BURDICK, Justice

Ryan M. Mitchell appeals the Bannock County district court's order granting summary judgment in favor of the State of Idaho. Specifically, Mitchell appeals the district court's decision that (1) the Idaho Tort Claims Act (ITCA) shielded the State from liability for its decision to discontinue mental health services for Gerald Durk Simpson; and (2) the victims' rights laws do not provide a private cause of action for declaratory and injunctive relief against a state agency. We affirm in part, reverse in part, and remand.

1

# I.  FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a shooting that occurred on September 27, 2010. That day, Gerald Durk Simpson shot Ryan Mitchell in the back outside of a coffee shop in Pocatello. Prior to the shooting, Simpson had been receiving mental health services from the Idaho Department of Health and Welfare's Adult Mental Health program. In fact, Simpson had been receiving services from the Idaho Department of Health and Welfare (IDHW) for most of his adult life.

However, on June 23, 2010, IDHW sent a letter to Simpson informing him that he was being released from its program. The letter informed Simpson that he no longer qualified for the services that he had been receiving from IDHW.

The shooting occurred a little over three months after Simpson was released from IDHW's care and custody. On September 30, 2010, the Bannock County Prosecuting Attorney's Office filed a charge of Aggravated Battery against Simpson with notice that the State would seek an enhancement penalty for the use of a deadly weapon in the commission of a crime.

On October 8, 2010, approximately ten days after the shooting, psychologist Daniel Traughber, Ph.D., prepared a memorandum (Traughber Memorandum) on behalf of the IDHW. The Traughber Memorandum explained the processes and procedures that were used to implement the budget cuts so that patient mental health services would be terminated in a way that "reduced the risk of harm to patients and/or the community."

On May 3, 2012, the State filed a petition with the district court to have a Conservator and Guardian appointed for Simpson. On August 30, 2012, the district court dismissed the criminal charges against Simpson due to Simpson's lack of competency to stand trial. Shortly thereafter, Mitchell filed suit in the Bannock County district court alleging, among other claims, that the State violated Mitchell's constitutional and statutory victims' rights and that the State was negligent when it discontinued Simpson's services. Mitchell sought declaratory and injunctive relief for his victims' rights claim and sought damages for his negligence claim under the ITCA.

On December 23, 2013, the district court issued its memorandum decision and order, which granted summary judgment to the State on both the victims' rights claim and the negligence claim. As to the victims' rights claim, the district court reasoned that declaratory and injunctive relief are not provided for under the constitutional and statutory victims' rights provisions, and, consequently, those remedies were not available to enforce the provisions. With

respect to Mitchell's negligence claim, the district court determined that the budget cuts were the primary reason for the decision to terminate Simpson's services, which meant the State was carrying out a discretionary function and therefore entitled to immunity. Mitchell timely appealed to this Court.

## II.   ISSUES ON APPEAL

1. Whether the district court erred when it granted summary judgment to the State on Mitchell's negligence claim.
2. Whether the district court erred in granting summary judgment on Mitchell's victims' rights claim.

## III.   STANDARD OF REVIEW

This Court reviews a summary judgment order under the same standard the district court used in ruling on the motion. *Kolln v. Saint Luke's Reg'l Med. Ctr.*, 130 Idaho 323, 327, 940 P.2d 1142, 1146 (1997). That is, summary judgment is appropriate if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). We construe disputed facts in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party. *Major v. Sec. Equip. Corp.*, 155 Idaho 199, 202, 307 P.3d 1225, 1228 (2013).

In considering a motion for summary judgment for a governmental entity involving a question of immunity under the ITCA, the reviewing court should determine whether tort recovery is allowed under the laws of Idaho. *Dorea Enter., Inc. v. City of Blackfoot*, 144 Idaho 422, 424, 163 P.3d 211, 213 (2007) (quoting *Harris v. State Dep't of Health & Welfare*, 123 Idaho 295, 298 n.1, 847 P.2d 1156, 1159 n.1 (1992)). If tort recovery is allowed in Idaho, the Court then must determine whether an exception to liability under the tort claims act shields the government from liability. *Id.* If no exception to liability applies, the Court must then determine whether the merits of the claim entitle the moving party to summary judgment. *Id.*

"On appeal from summary judgment, this Court exercises free review over interpreting a statute's meaning and applying the facts to the law." *Teurlings v. Larson*, 156 Idaho 65, 69, 320 P.3d 1224, 1228 (2014) (internal quotation omitted).

## IV.   ANALYSIS

This appeal involves two distinct issues. The first is whether the district court erred when it granted summary judgment in favor of the State on Mitchell's negligence claims. This issue

turns on whether IDHW's decision to release Simpson from its Adult Mental Health program was a discretionary function or an operational function. The second issue is whether the district court erred when it granted summary judgment in favor of the State on Mitchell's victims' rights claim. Each issue will be addressed in turn below.

**A. The district court erred when it granted summary judgment in favor of the State on Mitchell's negligence claim.**

Mitchell argues that the district court erred when it granted summary judgment in favor of the State on his negligence claim because the State's decision to discontinue Simpson's mental health services was not a discretionary function that entitles the State to immunity. Alternatively, Mitchell argues that the affidavits the district court relied on to grant summary judgment were inadmissible and therefore summary judgment was inappropriate. "The admissibility of evidence contained in affidavits and depositions in support of or in opposition to a motion for summary judgment is a threshold matter to be addressed before applying the liberal construction and reasonable inferences rule to determine whether the evidence creates a genuine issue of material fact for trial." *Fragnella v. Petrovich*, 153 Idaho 266, 271, 281 P.3d 103, 108 (2012). Thus, we address the evidentiary issue first.

Mitchell argues that the affidavits the district court relied on to grant summary judgment were inadmissible. Mitchell contends that the district court erred in denying his request to strike two of the State's affidavits—the Jodi Osborn affidavit and the Sue Chadwick affidavit—because neither affidavit met the admissibility standards.

This Court reviews challenges to a trial court's evidentiary rulings on a summary judgment motion for an abuse of discretion. *Bybee v. Gorman*, 157 Idaho 169, 173, 335 P.3d 14, 18 (2014). "This Court engages in a three-part inquiry when reviewing a lower court's decision for an abuse of discretion: (1) whether the lower court rightly perceived the issue as one of discretion; (2) whether the court acted within the boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of reason." *Id.* (citation omitted). The district court's determination on a motion to strike is also reviewed under this standard. *Teurlings*, 156 Idaho at 75, 320 P.3d at 1234.

1. The Osborn affidavit

As mentioned above, Mitchell asserts that the Osborn affidavit does not satisfy the requirements of I.R.C.P. 56(e) because Osborn does not state that the affidavit is based on her

4

personal knowledge. I.R.C.P. 56(e) states that affidavits supporting and opposing a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." I.R.C.P. 56(e). These requirements "are not satisfied by an affidavit that is conclusory, based on hearsay, and not supported by personal knowledge." *State v. Shama Res. Ltd. P'ship*, 127 Idaho 267, 271, 899 P.2d 977, 981 (1995). *See also Sprinkler Irrigation Co., Inc. v. John Deere Ins. Co., Inc.*, 139 Idaho 691, 696–97, 85 P.3d 667, 672–73 (2004); *Oats v. Nissan Motor Corp. in U.S.A.*, 126 Idaho 162, 166, 879 P.2d 1095, 1099 (1994).

The district court, after citing I.R.C.P. 56(e)'s requirements, determined that the Osborn affidavit was admissible. Specifically, the court reasoned:

> The Affidavit of Jodi Osborn states that she is the Financial Executive Officer for the Idaho Department of Health and Welfare. The affidavit goes on to state that the budget for the Department of Health and Welfare was cut by $36,550,600, not including decreases in matching federal funds. That information is relevant to the primary issue of whether the release of Defendant Simpson was related to budgetary constraints. Ms. Osborn clearly has personal knowledge of the budget cuts through her role as the Financial Executive Officer for the Idaho Department of Health and Welfare. As such, this Court hereby finds the Affidavit of Jodi Osborn to be admissible and relevant, and the request to strike that affidavit is hereby DENIED.

Based on the foregoing, we conclude that the district court acted within the boundaries of its discretion and consistent with the applicable legal standards when it denied Mitchell's motion to strike the Osborn affidavit. Furthermore, the district court reached its decision through an exercise of reason. The Osborn affidavit states that Osborn is a resident of Boise; that she is the Financial Executive Officer for the IDHW; that she has held the position of Financial Executive Officer for a little over two-and-a-half years; that her responsibilities are to manage the financial staff and operations for IDHW; and that the legislature cut IDHW's budget between 2009 and 2010 by $36,550,600, and that that figure did not reflect the resulting decrease in IDHW's federal matching funds.

Although the affidavit does not explicitly aver that the facts contained therein are based on personal knowledge, the fact that Osborn was the Financial Executive Officer for the IDHW is sufficient to establish that the details regarding the budget cutbacks were based on personal knowledge. There is no case law in Idaho to suggest that an affidavit must explicitly aver that it is based on personal knowledge. Rather, I.R.E. 602 suggests the opposite. That rule provides that

5

"[e]vidence to prove personal knowledge may, but need not, consist of the testimony of the witness." I.R.E. 602. Thus, "an affidavit need not contain an explicit recital of personal knowledge when it can be reasonably inferred from its contents that the material parts thereof are within the affiant's personal knowledge." 2A C.J.S. Affidavits § 47. *See also* Jeff Rambin, *Attacking Errors in Affidavits Used As Summary Judgment Proof*, 46 Baylor L. Rev. 789, 805 (1994) (listing cases where the personal knowledge requirement for affidavits was satisfied where they stated that the affiant was employed where the relevant acts occurred and when they occurred). Because the Osborn affidavit avers that Osborn was the Financial Executive Officer for IDHW and that she was responsible for managing the financial staff and operations for IDHW, the district court could reasonably infer that Osborn had personal knowledge of the budget cuts. Thus, we hold that the district court did not abuse its discretion when it denied Mitchell's request to strike the Osborn affidavit.

       2.   <u>The Chadwick affidavit and accompanying exhibits</u>

Mitchell also asserts that the Chadwick affidavit and accompanying exhibits are inadmissible. Mitchell contends that the exhibits cannot be properly authenticated by Chadwick and that they do not fall under the business records exception to the rule against hearsay. We agree.

The Chadwick affidavit avers that Chadwick is an employee of the State of Idaho and that the affidavit was made based on Chadwick's own personal knowledge. It further states that in her position as Office Services Supervisor, Chadwick became familiar with the documents maintained by IDHW; identifies each of the three exhibits attached to her affidavit; states that each of the exhibits was maintained in the normal course of business at IDHW; and states that each of the exhibits were true and correct copies of the documents maintained in the ordinary course and scope of business of IDHW. The first exhibit attached to the Chadwick affidavit was the Traughber Memorandum. The Second exhibit was a copy of IDHW's June 23, 2010 letter to Simpson informing him that his services were being discontinued. The third attachment was a copy of an interdepartmental email regarding department resources.

The district court denied Mitchell's request to strike the Chadwick affidavit and its accompanying exhibits on the basis that the affidavit was made on Chadwick's personal knowledge and that the exhibits were admissible under the business records exception to the rule against hearsay. Mitchell asserts that Chadwick, as office services supervisor for IDHW, could

not properly authenticate the exhibits because she did not author them. Mitchell further argues that the exhibits do not fall under the business records exception because Chadwick's affidavit only states that the documents had been maintained by the State, not that they were produced in the ordinary course of business, at or near the time of the occurrence, or that they were not created in anticipation of trial.

Idaho Rules of Evidence 803(6), the business records exception to the hearsay rule, provides, in relevant part:

> **Rule 803. Hearsay Exceptions; availability of the declarant immaterial.**
>
> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . .
>
> **(6) Records of Regularly Conducted Activity.** A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

The general requirements for the admission of business records are that the documents be "produced in the ordinary course of business, at or near the time of occurrence and not in anticipation of trial." *Beco Corp. v. Roberts & Sons Constr. Co.*, 114 Idaho 704, 711, 760 P.2d 1120, 1127 (1988). These foundational requirements "supply the degree of trustworthiness necessary to justify an exception to the rule against hearsay." *Id.* "It is necessary that the circumstances behind the creation of the business records imply a high degree of veracity." *Hurtado v. Land O'Lakes, Inc.*, 147 Idaho 813, 815, 215 P.3d 533, 535 (2009) (quoting *Christensen v. Rice*, 114 Idaho 929, 934, 763 P.2d 302, 307 (Ct. App. 1988)).

"The records or reports sought to be admitted into evidence under the business records exception to the hearsay rule need not be authenticated by the person who made the records, but it is necessary that the records be authenticated by a person who has custody of the record as a regular part of his or her work or who has supervision of its creation." *Shea v. Kevic Corp.*, 156 Idaho 540, 547, 328 P.3d 520, 527 (2014) (quoting *Henderson v. Smith*, 128 Idaho 444, 450, 915 P.2d 6, 12 (1996)). Moreover, Rule 902(11) explicitly states that business records are self-

authenticating where the original or duplicate of the record of regularly conducted activity is certified by the custodian or other qualified individual. I.R.E. 902(11). The custodian or qualified individual must certify that the record

> (i) was made, at or near the time of the occurrence of the matters set forth, by (or from information transmitted by) a person with knowledge of those matters, (ii) is kept in the course of the regularly conducted activity and (iii) was made by the regularly conducted activity as a regular practice, unless the sources of information or the method or circumstances or preparation indicate a lack of trustworthiness . . . .

*Id.* The rules state that "certifies" means "a written declaration under oath subject to penalty of perjury. . . ." *Id.*

Here, although Chadwick averred that the documents were kept in the normal course of business at IDHW and that she was familiar with them through her role as office services supervisor, there is nothing in the affidavit stating that as office services supervisor, Chadwick had custody of the records as a regular part of her work or that she had supervision of their creation. Moreover, the Traughber Memorandum, which was prepared a little over a week after the shooting, purports to describe "the selection process of clients for closure and the steps that were taken in order to reduce the possibility of harm to clients and/or the community." However, there was no foundation to show that the Traughber Memorandum was prepared in the normal course of business. In any event, because the Chadwick affidavit failed to establish the foundational requirements of the business records exception, we hold that the district court abused its discretion in denying Mitchell's motion to strike the affidavit and its accompanying exhibits.

Without the Chadwick affidavit and accompanying exhibits, there was insufficient admissible evidence for the district court to make a determination as to whether the decision to cut Simpson from IDHW's mental health services was operational or discretionary. Given the limited nature of the facts before it, it was error for the district court to hold that the State's decision to close Simpson's file was discretionary. Accordingly, we hold that the district court erred in granting summary judgment to the State on Mitchell's negligence claim.

We note that even if the Chadwick affidavit and accompanying exhibits were admissible, there were insufficient facts for the trial court to determine whether IDHW's decision to cut Simpson from its health services was operational or discretionary. It is clear that the complaint alleges that when IDHW made the decision to close Simpson's file, it negligently followed, or

8

failed to follow, procedures that were put into place to determine whether a client's file should be closed. The evidence does not indicate who made the decision to close Simpson's file in particular or how that decision was made.

Thus, on remand, these are some issues of fact that came to mind as this Court worked on this case: (1) whether there were policies or procedures in place for determining which client files should be closed; (2) how the decision was made to close Simpson's file; (3) who made the decision to close Simpson's file and whether that individual was authorized to make such a decision; and (4), assuming policies and procedures were in place to determine client file closures, whether IDHW followed those policies or procedures.

In making these determinations, there appear to be some discrepancies that may need to be resolved. First, the letter IDHW sent to Simpson informing him that he no longer qualified for IDHW's services was utterly inconsistent with the procedures identified in the Traughber Memorandum that IDHW allegedly followed to determine which clients' files to close. More specifically, the June 23, 2010 letter IDHW sent to Simpson appears to suggest that Simpson's file was being closed because, after reviewing eligibility guidelines prescribed by the legislature, Simpson no longer qualified for services. Indeed, the letter informed Simpson that IDHW was closing his file because Simpson "[did] not meet the criteria for [IDHW's] intensive level of services." The Traughber Memorandum on the other hand, which was written on October 8, 2010, approximately ten days after the shooting, suggests that the decision to close Simpson's file may have been based on budget cuts together with a reassessment of Simpson's needs. However, as mentioned above, there was no testimony linking the procedures outlined in the Traughber Memorandum to the decision to close Simpson's file, nor to identify who had the authority to make such a decision.

Once the issues of material fact are resolved, the district court should look to this Court's decisions[1] involving the operational/discretionary distinction to determine whether the decision to close Simpson's file was operational or discretionary. If, for example, the evidence on remand indicates that IDHW closed Simpson's file based on policy reasons such as budgetary constraints or other factors, the decision could be discretionary, as it would involve planning rather than

---

[1] In particular, this Court's decisions in *Jones v. City of St. Maries*, 111 Idaho 733, 727 P.2d 1161 (1986) and *Lawton v. City of Pocatello*, 126 Idaho 454, 886 P.2d 330 (1994), together with the discussion of the distinction between operational and discretionary decisions in *Sterling v. Bloom*, 111 Idaho 211, 226–33, 723 P.2d 755, 770–77 (1986), may be of particular help in this case.

operational activity, and the State would be immune from liability even if the decision was negligently made. If, on the other hand, the evidence indicates that IDHW had policies or procedures in place to determine which clients' files should be closed, then IDHW was obligated to carry out or follow those policies and procedures with due care and may be liable for any failure to do so.

**B. The district court did not err when it granted summary judgment in favor of the State on Mitchell's victims' rights claim.**

Mitchell argues that the district court erred when it granted summary judgment to the State on his victims' rights claim on the basis that neither the Idaho Constitution nor the Victims' Rights Statute create a mechanism for enforcement of those rights. Mitchell contends that because the Constitution states that the provisions are self-executing, this Court may grant declaratory and injunctive relief to enforce the rights. The State counters that the district court correctly determined that the victims' rights provisions do not explicitly allow for declaratory or injunctive relief and that such relief is therefore not available to enforce the victims' rights provisions. We do not reach the merits of these contentions, however, because the issue is moot.

"An issue becomes moot if it does not present a real and substantial controversy that is capable of being concluded through judicial decree of specific relief." *Ameritel Inns, Inc. v. Greater Boise Auditorium Dist.*, 141 Idaho 849, 851, 119 P.3d 624, 626 (2005). Mootness applies not only to a dead issue, but also when an appellant lacks a legal interest in the outcome. *State v. Hoyle*, 140 Idaho 679, 682, 99 P.3d 1069, 1072 (2004). Mootness also applies when a favorable judicial decision would not result in any relief. *State v. Rogers*, 140 Idaho 223, 227, 91 P.3d 1127, 1131 (2004). Thus, this Court will not hear and resolve an issue that presents no justiciable controversy and a judicial determination will have no practical effect on the outcome. *Hoyle*, 140 Idaho at 682, 99 P.3d at 1072. Rather, "[t]his court may dismiss an appeal when it appears that only a moot question is involved." *Downing v. Jacobs*, 99 Idaho 127, 127–28, 578 P.2d 243, 243–44 (1978).

Here, even if this Court rendered a favorable decision for Mitchell on his victims' rights claim, that decision would not result in any relief for Mitchell. The underlying criminal charges against Simpson have been dropped. A judicial determination on this issue would therefore have no practical effect on the outcome: there are no further proceedings for which Mitchell could request or receive notice. The only practical effect a favorable judgment for Mitchell would have is this Court restating the clear rights already established under Idaho Constitution article I,

10

section 22 and Idaho Code section 19-5306 and stating that the prosecutor erred when it failed to provide Mitchell notice of those rights. Thus, declaratory or injunctive relief would have no effect on the outcome here. For these reasons, we hold that the issue is moot.[2] Consequently, the district court did not err when it granted summary judgment in favor of the State on Mitchell's victims' rights claim.

## V.    CONCLUSION

We reverse the district court's grant of summary judgment to the State on Mitchell's negligence claim. We affirm the district court's grant of summary judgment on Mitchell's victims' rights claim because that issue is moot. We remand for further proceedings consistent with this opinion. No costs are awarded on this appeal.

Chief Justice J. JONES and Justices EISMANN, W. JONES and HORTON, CONCUR.

---

[2] Although we hold that the issue is moot, we note that it is clear in this case that the prosecutor failed to fulfill his duty to inform Mitchell of his rights pursuant to Idaho Constitution article 1, section 22 and Idaho Code section 19-5306. The victims' rights provisions are mandatory and require the prosecutor at the initiation of criminal proceedings to notify victims of their rights. That was not done in this case. If notice had been given to Mitchell, he might have understood what his rights were from the start and could have requested notice of future proceedings, including notice of the possibility of Simpson being released.