# IN THE SUPREME COURT OF THE STATE OF IDAHO
**Docket No. 47460**

WALTER S. WALLACE and WILMA G. WALLACE, husband and wife,

   Plaintiffs-Counterdefendants,

v.

JANET L. HEATH and BRUCE STILL,

   Defendants-Counterclaimants.

_____

JANET L. HEATH,

   Third Party Plaintiff-Appellant,

v.

JED TAYLOR dba TAYLOR REAL ESTATE, an Idaho real estate brokerage; and ANGELA PALMER, an individual,

   Third Party Defendants-Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, September 2020 Term

Opinion Filed: January 6, 2021

Melanie Gagnepain, Clerk

---

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bingham County. Darren B. Simpson, District Judge.

The decision of the district court in <u>affirmed</u> in part, <u>reversed</u> in part, and <u>remanded</u> for further proceedings.

Petersen Moss Hall & Olsen, Idaho Falls, for Appellants. Nathan M. Olsen argued.

Anderson, Julian & Hull, LLP, Boise, for Respondents. Phillip J. Collaer argued.

---

BURDICK, Justice.

This case addresses the statutory duties a real estate agent owes to a buyer or seller in a real estate transaction. Janet L. Heath appeals an order and judgment of the Bingham County district court granting Angela Palmer and Taylor Real Estate's motion for summary judgment and

dismissing her claims for negligence and breach of contract. The district court granted the motion for summary judgment after determining that Heath had not raised a genuine issue of material fact regarding whether statutory duties owed to her by Palmer and Taylor Real Estate were breached and that Palmer and Taylor Real Estate were entitled to judgment as a matter of law on both of Heath's claims. On appeal, Heath argues the district court erred in granting summary judgment against her because Palmer and Taylor Real Estate breached statutory duties owed to her as a part of their brokerage relationship.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

The events that brought about this case began in the fall of 2017 when Heath began looking to buy a house in Bingham County, Idaho. On November 20, 2017, she sent a text message to her cousin, Angela Palmer, who was a local real estate agent, stating, "I might want to look into buying a house. But I have no idea where to start. And like no down payment. And a first time buyer. Can you help me out? Be my realtor please if I decide to go this way." Palmer's response was "Abso-freakin'lutely [sic] my cousin!" Heath and Palmer communicated back and forth via emails and text messages, arranging financing through a lender, and discussing property listings. Four days after Heath's initial text message to Palmer, they met to view several of the listings together, including a property owned by Donald and Shirley Ciccone.

That same day, Heath decided to make a written offer on the Ciccone property. The written offer—titled "RE-21 Real Estate Purchase and Sale Agreement"—indicated that Palmer and Taylor Real Estate were acting as "nonagents" for Heath. Heath also signed an Agency Disclosure Brochure indicating that she was a "customer" of Palmer and Taylor Real Estate. The brochure further stated that Heath would remain a "customer" unless she entered into a written representation agreement. Heath and Palmer never signed such an agreement.

After another four days, the Ciccones made a written counter-offer, dated November 28, 2017, which Heath accepted by signing it that same day. After Heath and the Ciccones entered into a purchase contract, the Ciccones gave Palmer a property condition disclosure, and she forwarded a copy to Heath. The disclosure revealed the existence of a shared driveway agreement with a neighboring property owned by Walter and Wilma Wallace.

Palmer obtained a copy of the driveway agreement, which was recorded in 1998 (hereinafter "1998 Driveway Agreement"), and forwarded it to Heath via email on December 6, 2017. The 1998 Driveway Agreement described a shared driveway between the Ciccones' and the

Wallaces' properties, measuring 21 feet wide and 127 feet deep from the edge of the highway fronting the properties.

The closing date was set for January 19, 2018. At some point before the closing date, the title company contacted Palmer and informed her that the 1998 Driveway Agreement needed to be modified to "run with the land" before it would insure the title. Palmer contacted Mr. Wallace and informed him that Heath was trying to buy the Ciccone property but could not do so without a driveway agreement. Mr. Wallace measured the paved portion of the driveway that "provides access to both properties" and recorded the measurements as "43 feet by 20 feet." He provided those measurements to Palmer. Palmer stated in her declaration that she had "no involvement with drafting those modifications" and did not know who drafted them, but that she was under the impression they were prepared by Ciccone, working with the Wallaces.

On January 9, 2018, ten days before closing, Palmer received a copy of the revised driveway agreement (hereinafter "2018 Driveway Agreement") from the title company and forwarded it to Heath as an attachment to the following email:

> I found out that the driveway agreement that was in place that I sent you previously was just between the neighbor and the seller. I had seller work with title to create an agreement like we have for the well so that it moves forward with the next buyers on the property. That way it'll make it easier for you to sell and you won't have to work through that when you sell the property :-) we will be signing this at closing. Just wanted to give you a copy of it for your record.
>
> Angela Palmer
> Associate Broker/REALTOR
> Taylor Real Estate

Palmer admits that she did not read the 2018 Driveway Agreement before forwarding it to Heath. Heath acknowledged Palmer's email, responding "Thank you!" by email, but concedes that she did not read the attached copy of the agreement either.

On January 12, 2018, the Wallaces and the Ciccones signed the 2018 Driveway Agreement, which was essentially the same as the 1998 Driveway Agreement except that it was "a covenant running with the land" and redefined the shared portion of the driveway as "21 feet wide and run[ing] to a depth of approximately 43 feet from the edge of Highway 26 between the two properties." The title company forwarded a signed copy of the 2018 Driveway Agreement to Palmer that same day.

3

Heath and the Ciccones closed the deal on the property the morning of January 19, 2018, and the warranty deed and the 2018 Driveway Agreement were recorded with the Bingham County Recorder that afternoon. Heath stated in her declaration that she would not have gone through with the sale if she had known that the driveway easement had been shortened by approximately two-thirds of its original length, effectively cutting off access to the garages on her property and significantly reducing the property's value.

The proceedings in this case began in June 2018 when the Wallaces filed a petition to quiet title against Heath and another individual living in her home, Bruce Still. The Wallaces filed their petition after a dispute with Heath and Still regarding the dimensions and use of the shared driveway. After filing an answer and counterclaim and conducting some discovery, Heath filed a third-party claim against Palmer and Jed Taylor d/b/a Taylor Real Estate. Heath's third-party claims against Palmer and Taylor Real Estate were for negligence and breach of contract.

After Palmer and Taylor Real Estate filed an answer, Heath moved for partial summary judgment, arguing that there was no dispute of material fact that she was either a "client" or "customer" of Palmer and Taylor Real Estate and that they breached statutory duties owed to her. Shortly thereafter, Palmer and Taylor Real Estate filed their own motion for summary judgment. Palmer and Taylor Real Estate argued they were entitled to judgment on Heath's breach of contract claim as a matter of law because they had not entered into a written contract for representation with Heath. Palmer and Taylor Real Estate also argued that Heath was not entitled to the equitable indemnification or damages based on reliance requested in her complaint.

The district court held a hearing on the motions for summary judgment and both parties argued. On August 20, 2019, the district court entered an order denying Heath's motion for partial summary judgment and granting Palmer and Taylor Real Estate's motion for summary judgment. Nine days later, the district court entered a judgment dismissing Heath's third-party claims against Palmer and Taylor Real Estate.

Heath timely appealed.

## II.    ISSUES ON APPEAL

1. Did the district court err in determining that Heath was a "customer" and not a "client" under Idaho Code sections 54-2086 and 54-2087 and subsequently dismissing her breach of contract claim?

2. Did the district court err in concluding that Heath failed to show there was a genuine dispute of material fact regarding whether Palmer and Taylor Real Estate violated the statutory duties owed to her as a "customer" under Idaho Code section 54-2086?

3. Should this Court uphold the district court's order granting summary judgment in favor of Palmer and Taylor Real Estate on Heath's negligence claim because it is barred by the economic loss rule?

4. Did the district court err in determining that the remedies of indemnification and damages based upon reliance were unavailable to Heath?

## III.    STANDARD OF REVIEW

"This Court reviews a summary judgment order under the same standard the district court used in ruling on the motion." *Mitchell v. State*, 160 Idaho 81, 84, 369 P.3d 299, 302 (2016) (citing *Kolln v. Saint Luke's Reg'l Med. Ctr.*, 130 Idaho 323, 327, 940 P.2d 1142, 1146 (1997)). That is, summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). "We construe disputed facts in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party." *Mitchell*, 160 Idaho at 84, 369 P.3d at 302 (citing *Major v. Sec. Equip. Corp.*, 155 Idaho 199, 202, 307 P.3d 1225, 1228 (2013)).

## IV.    ANALYSIS

The relationship between a real estate agent and a potential buyer or seller of real estate in Idaho is governed by The Idaho Real Estate Brokerage Representation Act. *See* I.C. §§ 54-2082 to 54-2097. There are four types of brokerage relationships recognized under the Act:

(a) Nonagency;
(b) Agency representation;
(c) Limited dual agency representation;
(d) Limited dual agency with assigned agents.

I.C. § 54-2084(2).

When a buyer or seller is "represented" by a brokerage, it means that they have entered into a statutory agency relationship in a regulated real estate transaction. I.C. § 54-2083(15). In such a case, the buyer or seller is considered a "client" of the real estate brokerage and its licensees. I.C. § 54-2083(5). A buyer or seller can only become a client in a regulated real estate transaction by entering into an express written contract for agency representation with a brokerage. *See* I.C. § 54-2083(5) (defining "client"); I.C. § 54-2087 ("If a buyer or seller enters into a written contract for representation in a regulated real estate transaction, that buyer or seller becomes a client . . ."). Brokerages and their licensees owe the duties spelled out in Idaho Code section 54-2087 to their clients. I.C. § 54-2087.

5

When a buyer or seller enters into a brokerage relationship that is not created by a written contract for agency representation, the buyer or seller is a "customer." *See* I.C. § 54-2083(7) (defining "customer"); I.C. § 54-2086 ("If a buyer, prospective buyer, or seller is not represented by a brokerage in a regulated real estate transaction, that buyer or seller remains a customer . . ."). In such a case, the brokerage and its licensees are considered "nonagents" because although they are working with the buyer or seller as a customer, they do not represent them. I.C. § 54-2083(13). Brokerages and their licensees acting as nonagents owe the duties spelled out in Idaho Code section 54-2086 to their customers. I.C. § 54-2086.

**A. The district court did not err in determining that Heath was a "customer" and not a "client" under Idaho Code sections 54-2086 and 54-2087 and subsequently dismissing her breach of contract claim.**

The district court reasoned that Heath was a "customer," not a "client," because she had not entered into an express written contract for representation with Palmer or Taylor Real Estate. Having determined that there was no contract, the district court concluded that Heath had not stated a cause of action for breach of contract. Heath argues that she was a "client" because Palmer entered into a written contract with her when she sent the January 9, 2018, email explaining that she had the seller work with the title company to create the new driveway agreement.

As explained above, a buyer or seller can only be a "client" under Idaho Code section 54-2087 if they enter into an express written contract for agency representation with a brokerage. I.C. § 54-2087. A written contract for agency representation, by its very nature, cannot be entered into orally or by assumption or implication. I.C. § 54-2083(16). Neither the agency disclosure brochure nor the representation confirmation included in a purchase and sale agreement can create a brokerage relationship. I.C. § 54-2085(6). The contract for representation must be a separate, signed, written agreement. *Id.* Other than the signed writing requirement, the Idaho Real Estate Brokerage Representation Act does not require that the written contract between a buyer or seller and a real estate agent take a specific form.

However, a writing is not a contract when its terms are "so vague, indefinite and uncertain that the intent of the parties cannot be ascertained . . . ." *Griffith v. Clear Lakes Trout Co.*, 143 Idaho 733, 737, 152 P.3d 604, 608 (2007). Furthermore, "[n]o enforceable contract comes into being when parties leave a material term for future negotiations, creating a mere agreement to agree." *Maroun v. Wyreless Systems, Inc.*, 141 Idaho 604, 614, 114 P.3d 974, 984 (2006) (quoting

6

17A Am. Jur. 2d *Contracts* § 181 (2004)), *abrogated on other grounds by Wandering Trails, LLC v. Big Bite Excavation, Inc.*, 156 Idaho 586, 329 P.3d 368 (2014).

Heath argues that the email exchange constituted a written contract for representation because it was an agreement in writing that Palmer would "have the 'sellers and title [company] create an agreement' for the shared driveway to ensure that it 'passed on' to Heath when the property was sold." Heath further argues that her response to Palmer's email—"Thank you!"— was an acknowledgement of Palmer's agreement. In other words, Heath claims that Palmer's email was an offer and Heath's reply was an acceptance, thus forming a contract. We disagree. The emails are missing material terms that must be included in a contract for representation. For example, the emails do not specify the amount of Palmer's commission or compensation, the scope of representation, or whether Heath is permitted to engage other real estate agents. Palmer's email more closely resembles an update in an already initiated real estate transaction than it does an agreement between the parties intended to form a new contract for representation.

Equally fatal to Heath's argument is the fact that the email exchange took place weeks after Palmer prepared the purchase and sale agreement entered into by Heath and the Ciccones. Idaho Code section 54-2085 provides that a brokerage's relationship with the buyer or seller, including the agent/nonagent, client/customer distinction, "must be determined and all necessary agreements executed no later than the preparation of a purchase and sale agreement." I.C. § 54-2085(3). Thus, Palmer's January 9, 2018, email could not have operated as a contract for representation because Palmer prepared the purchase and sale agreement over a month beforehand, on November 24, 2017.

Likewise, Heath's initial text message exchange with Palmer cannot be construed as a written contract for representation. The last sentence of Palmer's initial text message, "Be my realtor please if I decide to go this way," is both prospective and conditional in nature. It is essentially a request for Palmer to be Heath's realtor if she decides that she needs a realtor. Like in the emails, the parties did not agree to any material terms. Thus, the text message exchange between Heath and Palmer was not a written contract for representation—at most it was merely an "agreement to agree." *See Maroun*, 141 Idaho at 614, 114 P.3d at 984.

In sum, neither the text message exchange nor Palmer's January 9, 2018, email to Heath constituted a written contract for representation. As such, the district court did not err in concluding no written contract existed between Heath and Palmer or Taylor Real Estate. Nor did the district

7

court err in determining that the lack of a contract meant Heath was a "customer," not a "client," for the purposes of the Idaho Real Estate Brokerage Representation Act.

Finally, Heath argues that even if there was no written contract for representation between her and Palmer or Taylor Real Estate, Palmer's January 9, 2018, email was a written agreement to undertake additional obligations under Idaho Code section 54-2087(7). Specifically, she argues that Palmer agreed in writing to "pursue a joint driveway agreement that would ensure that the existing driveway agreement would 'pass on' to Heath as part of the sale of the property." Heath's argument fails because Idaho Code section 54-2087(7) is inapplicable.

Section 54-2087(7) provides that "[u]nless otherwise agreed to in writing, a brokerage and its licensees owe no duty to a *client* to conduct an independent inspection of the property and owe no duty to independently verify the accuracy or completeness of any statement or representation made regarding a property." I.C. § 54-2087(7) (emphasis added). As discussed above, section 54-2087 lays out the duties brokerages and their licensees owe to *clients*. It does not apply to *customers*. Because there was no written contract for representation, Heath was neither Palmer nor Taylor Real Estate's client. Therefore, Palmer could not have taken on additional obligations to Heath under Idaho Code section 54-2087(7).

Because there was no contract, Palmer and Taylor Real Estate owed no contractual duties to Heath under Idaho Code section 54-2087. The district court did not err in granting summary judgment in favor of Palmer and Taylor Real Estate with respect to Heath's breach of contract claim.

**B. The district court erred in concluding that there was no genuine dispute of material fact regarding whether Palmer and Taylor Real Estate violated the statutory duties owed to Heath as a "customer" under Idaho Code section 54-2086.**

Additionally, the district court granted summary judgment in favor of Palmer and Taylor Real Estate on Heath's negligence claim after determining she had not shown a breach of the statutory duties owed to her as a "customer" under Idaho Code section 54-2086. Heath argues the district court erred in granting summary judgment because there was a genuine dispute of material fact as to whether Palmer and Taylor Real Estate violated their statutory duties.

Idaho Code section 54-2086 spells out the duties owed by a real estate agent to a customer:

> (1) If a buyer, prospective buyer, or seller is not represented by a brokerage in a regulated real estate transaction, that buyer or seller remains a customer, and as such, the brokerage and its licensees are nonagents and owe the following legal duties and obligations:

(a) To perform ministerial acts to assist the buyer or seller in the sale or purchase of real estate;

(b) To perform these acts with honesty, good faith, reasonable skill and care;

(c) To properly account for moneys or property placed in the care and responsibility of the brokerage;

*(d) To disclose to the buyer/customer all adverse material facts actually known or which reasonably should have been known by the licensee;*

(e) To disclose to the seller/customer all adverse material facts actually known or which reasonably should have been known by the licensee.

I.C. § 54-2086 (emphasis added). "Adverse material facts" as used in subsection (d) are facts "that would significantly affect the desirability or value of the property to a reasonable person or which establishes a reasonable belief that a party to the transaction is not able to or does not intend to complete that party's obligations under a real estate contract." I.C. § 54-2083(1). A real estate agent has "no duty to independently verify the accuracy or completeness of any statement or representation made by the seller or any source reasonably believed by the licensee to be reliable." I.C. § 54-2086(5).

The district court reasoned that Palmer had "no duty to independently verify the accuracy of the 2018 Joint Driveway Agreement" and that Palmer's email representation that the 2018 Driveway Agreement was designed to run with the land "was not untruthful." The district court also explained that Heath could not blame Palmer for "her own unwillingness to take an interest in the documents submitted to her by Palmer," describing them as "short, and not difficult to read" and pointing out that Heath had them both in her possession for more than a week prior to closing.

The district court is correct that Palmer had no duty to independently verify the accuracy or completeness of any statement or representation made by the Ciccones or any other source she reasonably believed to be reliable. *See* I.C. § 54-2086(5). However, the difference between the 1998 Driveway Agreement and the 2018 Driveway Agreement is not a question of accuracy or completeness. We have no reason to doubt that each document accurately and completely reflected the agreement that existed between the Ciccones and the Wallaces, both in 1998 and in 2018. The material issue is the difference between the two driveway agreements. Palmer does not allege that the Wallaces, the Ciccones, the title company, or anyone else stated or represented to her that the dimensions of the easements in each agreement were the same. Therefore, her statutory nonduty to independently verify the accuracy or completeness of statements or representations is irrelevant.

9

A genuine issue of material fact does exist, however, as to whether Palmer should have known about, and therefore should have disclosed to Heath, the change to the easement between the two driveway agreements. Taking as true the statement in Heath's declaration that the two-thirds reduction in easement length blocked access to her garages and significantly reduced the value of her property, the change in dimensions between the 1998 Driveway Agreement and the 2018 Driveway Agreement is an adverse material fact. As such, Palmer had a duty to disclose the change if she actually knew or reasonably should have known of it. *See* I.C. § 54-2086(1)(d). Though she did not draft either agreement, she facilitated the drafting of the 2018 Driveway Agreement to the extent that she called Mr. Wallace to ask him to create a new agreement with the Ciccones. Mr. Wallace stated in his affidavit that he provided measurements to Palmer for an easement that was 43 feet by 20 feet. A reasonable jury could conclude the measurements provided by Mr. Wallace should have alerted Palmer to a potential change because she had seen the 127-foot driveway when visiting the property on prior occasions. Furthermore, Palmer had both driveway agreements in her possession for at least as long as Heath did. A reasonable jury could conclude that if she had reviewed those documents, she would have noticed the dimensions had been changed. As the district court points out, the documents were short and easy to read, increasing the likelihood that even a cursory review by Palmer would have caused her to learn about the change. Understandably, the district court questions the wisdom of purchasing real property without reviewing the documents associated with the purchase. However, that the change also could have been discovered by Heath had she read the driveway agreements has no bearing on whether Palmer met her statutorily prescribed duties and improperly places a higher duty on Heath—an admitted newcomer to real estate law—to detect mistakes in legal documents than it places on Palmer—a licensed real estate agent with presumed experience and training in such matters. As such, the district court erred in determining that no genuine dispute of material fact existed as to whether Palmer breached her duty to disclose adverse material facts to Heath under Idaho Code section 54-2086.

Palmer and Taylor Real Estate also argue that, regardless of our decision as to Palmer, this Court should affirm the district court's grant of summary judgment in favor of Taylor Real Estate because Heath failed to argue on appeal that Taylor Real Estate breached any duties owed to Heath as a broker under Idaho Code section 54-2038. We find that argument unavailing. Idaho Code section 54-2038 specifically states that a "designated broker is responsible for the actions of its

10

licensees . . . performed within the course and scope of their employment or agency . . . ." I.C. § 54-2038. Heath cited to Idaho Code section 54-2038 in her opening brief and argued that Taylor Real Estate was liable for the actions of Palmer. Respondents do not argue that Palmer was not a licensee of Taylor Real Estate, nor do they argue that Palmer was not acting within the scope of her employment. The district court made no distinction between Palmer and Taylor Real Estate in coming to its decision. In light of the plain language of section 54-2038, we decline to make such a distinction on appeal.

**C. The applicability of the economic loss rule is not an issue properly before this Court on appeal.**

Palmer and Taylor Real Estate argue on appeal that the economic loss rule[1] also supports the district court's grant of summary judgment on Heath's negligence claim. Palmer and Taylor Real Estate briefly advanced this economic loss theory in their reply memorandum supporting their motion for summary judgment below, but the district court did not decide the motion on that basis. Nevertheless, they contend that we should affirm the district court's order based upon the "right result-wrong theory rule." *See State v. Garcia-Rodriguez*, 162 Idaho 271, 275, 396 P.3d 700, 705 (2017) (quoting *Idaho Sch. for Equal Educ. Opportunity v. Evans*, 123 Idaho 573, 580, 850 P.2d 724, 731 (1993)) ("It is true that 'where an order of the district court is correct but based upon an erroneous theory, this Court will affirm upon the correct theory . . . .'").

However, where one of the parties advances multiple theories below, but the district court comes to its decision based upon only one of those theories, this Court has required two criteria be

---

[1] "The economic loss rule is a judicially created doctrine that applies to negligence cases." *Path to Health, LLP v. Long*, 161 Idaho 50, 56, 383 P.3d 1220, 1226 (2016). Generally speaking, the economic loss rule "prohibits recovery of *purely* economic losses in a negligence action because there is no duty to prevent economic loss to another." *Brian and Christie, Inc. v. Leishman Elec., Inc.*, 150 Idaho 22, 28, 244 P.3d 166, 172 (2010) (quoting *Blahd v. Richard B. Smith, Inc.*, 141 Idaho 296, 300, 108 P.3d 996, 1000 (2005)). However, there are two exceptions to the economic loss rule: "(1) where a special relationship exists between the parties, or (2) where unique circumstances require a reallocation of the risk." *Aardema v. U.S. Dairy Sys., Inc.*, 147 Idaho 785, 792, 215 P.3d 505, 512 (2009) (citing *Just's, Inc. v. Arrington Constr. Co.*, 99 Idaho 462, 470, 583 P.2d 997, 1005 (1978)). With respect to the first exception, "[a] special relationship exists 'where the relationship between the parties is such that it would be equitable to impose such a duty.'" *Id.* (quoting *Duffin v. Idaho Crop Improvement Ass'n*, 126 Idaho 1002, 1008, 895 P.2d 1195, 1201 (1995)). This Court has applied the special relationship exception narrowly, holding that a special relationship exists in only two situations: "(1) where a professional or quasi-professional performs personal services; [or] (2) where an entity holds itself out to the public as having expertise regarding a specialized function, and by so doing, knowingly induces reliance on its performance of that function." *Id.* (citations omitted).

Because we ultimately do not reach the economic loss rule, we need not consider whether either of its exceptions apply to this case. However, we note that this Court's holding in *Sumpter v. Holland Realty, Inc.*, 140 Idaho 349, 93 P.3d 680 (2004), that real estate agents are not professionals for the purposes of professional malpractice, does not necessarily foreclose the special relationship exception from applying to real estate agents as "quasi-professionals." *See Blahd*, 141 Idaho at 301, 108 P.3d at 1001.

met before upholding the decision based on one of the unconsidered theories. *State v. Hoskins*, 165 Idaho 217, 222, 443 P.3d 231, 236 (2019). First, since the district court did not reach the alternative theory, we "must be satisfied that the parties had adequate opportunity to present evidence and arguments on the alternative issue." *Id.* Second, "the theory on which the lower court decides the issue must not reroute the course of proceedings so that the alternate base does not have a chance to be litigated." *Id.* In other words, "the affected party must have the reason and the opportunity to properly respond to the alternate grounds." *Id.* (citing *Medling v. Seawell*, 35 Idaho 333, 337–38, 207 P. 137, 138 (1922)).

Based on the record before this Court, we are not convinced that Heath had an adequate opportunity to present evidence and arguments before the district court regarding whether the economic loss rule barred her negligence claim. Palmer and Taylor Real Estate first asserted that the economic loss rule applied to Heath's negligence claim in their reply memorandum in support of their motion for summary judgment. By virtue of making the argument in their reply, Palmer and Taylor Real Estate raised the economic loss issue in a way that did not allow Heath an opportunity to file a written response in the ordinary course of the litigation. Although it is possible that the economic loss rule was discussed by the parties at the motion for summary judgment hearing, the transcript from that hearing was not included in the record on appeal. Accordingly, we cannot be satisfied that Heath had an opportunity to argue the issue at the hearing. Therefore, we decline Palmer and Taylor Real Estate's invitation to apply the right result-wrong theory rule to uphold the district court's order.

**D. Remedies of equitable indemnification and damages based upon reliance.**

The district court concluded that the remedies of equitable indemnification and reliance damages were unavailable to Heath. We briefly address each determination.

1. Equitable Indemnification

The common law right of indemnity is based on equitable principles that are available to a negligence claimant under certain circumstances. *Beitzel v. Orton*, 121 Idaho 709, 717, 827 P.2d 1160, 1168 (1992). There are a number of theories upon which equitable indemnification may be granted. *Id.* (citing *May Trucking Co. v. Int'l Harvester Co.*, 97 Idaho 319, 543 P.2d 1159 (1975)). However, equitable indemnity is not a viable remedy where "explicit statutory language abrogates such common law concepts." *Id.* (quoting *Chenery v. Agri–Lines Corp.*, 115 Idaho 281, 285, 766 P.2d 751, 755 (1988)).

12

Idaho Code section 54-2093 abolishes the common law of agency for the purposes of the Idaho Real Estate Brokerage Representation Act. I.C. § 54-2093. Common law agency theory is one of the theories by which equitable indemnity can be awarded, but it is not the only theory. *See May Trucking Co.*, 97 Idaho at 321–22, 543 P.2d at 1161–62 (discussing multiple theories upon which an award of equitable indemnity can be based). No other provision within the Act limits the remedies that are available to buyers or sellers for a real estate agent's breach of statutory duties. Therefore, the common law remedy of equitable indemnification is an appropriate remedy in a negligence claim alleging breach of a real estate agent's statutory duties, at least where the underlying requirements for equitable indemnification are met and the supporting theory is not based on common law agency.

The district court determined that Heath's argument for indemnity failed based on the following reasoning:

> Heath takes the position that Taylor and Palmer should indemnify Heath for any liability Heath might incur as to the Wallaces in this lawsuit. Her indemnity argument is premised upon her allegation that Taylor and Palmer failed "to disclose an adverse material fact (*i.e.* the 2018 Joint Driveway Agreement) and/or to exercise reasonable skill and care (ensuring that the purchase included a permanent easement for the entire shared driveway)." Since Palmer did, in fact, disclose the 2018 Joint Driveway Agreement to Heath, and since Palmer had no duty, as a non-agent, to ensure that the purchase included a permanent easement for the entire shared driveway, Heath offers no material evidence to support her indemnity argument.

In other words, the district court determined Heath was not entitled to indemnification because she had failed to demonstrate that Palmer or Taylor Real Estate breached any duty owed to her. Because we conclude that there was a genuine dispute of material fact with respect to whether Palmer and Taylor Real Estate breached their duty to disclose adverse material facts, we also conclude that the common law remedy of equitable indemnification is at least available as a remedy to Heath. That is not to say that she is entitled to equitable indemnification, just that the remedy is viable and Heath's argument should at least be considered by the district court on remand.

### 2. Contractual damages based on reliance.

Finally, the district court determined that Heath could not recover contractual damages, based upon a theory of common law reliance, because the Idaho Real Estate Brokerage Representation Act "preclude[s] common law causes of action." The district court further

13

explained that the Idaho Real Estate Brokerage Representation Act is the exclusive law governing conflicts between real estate agents and their clients or customers. Accordingly, it concluded remedies available at common law, that are not provided for within the statutory scheme, cannot be recovered in cases governed by the Act. We disagree.

While it is true that a statutory scheme precludes recovery of common law remedies where its provisions specifically allow for a statutorily prescribed remedy, *see Eller v. Idaho State Police*, 165 Idaho 147, 155, 443 P.3d 161, 169 (2019), the Idaho Real Estate Brokerage Representation Act is silent on the subject of remedies. *See* I.C. §§ 54-2082 to 54-2097. Without some provision addressing the remedies available under the Act, we cannot agree that it conflicts with or proscribes the common law by virtue of its enactment alone. Under the district court's reasoning, there would be no remedies available for any cause of action brought for a breach of the duties imposed by Idaho Code sections 54-2086 and 54-2087. In fact, if this Court were to extend this line of reasoning to its logical conclusion, there would be no remedy under any statutory scheme that did not explicitly provide for one. Thus, the district court erred in concluding that common law contractual remedies are not applicable to causes of action governed by the Idaho Real Estate Brokerage Representation Act.

There is a simpler reason, however, that contractual damages based upon reliance are not available to Heath. Such damages are, as the name implies, a remedy under the common law of contracts. *See* Restatement (Second) of Contracts § 349 (1981). As discussed above, Heath did not enter into a contract with Palmer or Taylor Real Estate and her breach of contract claim was properly dismissed. Accordingly, damages based on reliance are not an appropriate remedy in Heath's remaining claim for negligence.

### E. Attorney's fees

Palmer and Taylor Real Estate argue they are entitled to attorney's fees on appeal under Idaho Code section 12-120(3). However, we generally do not award attorney's fees when remanding an action after summary judgment has been improperly granted because we do not consider any party to the appeal as having yet prevailed. *Path to Health, LLP v. Long*, 161 Idaho 50, 59–60, 383 P.3d 1220, 1229–30 (2016) (citation omitted). Accordingly, we do not award attorney's fees to either party, but, upon resolution of this case, the district court may award the prevailing party reasonable attorney's fees incurred in connection with this appeal.

14

## V.    CONCLUSION

Based on the foregoing, the district court's dismissal of Heath's breach of contract claim is affirmed, the district court's order granting summary judgment in favor of Palmer and Taylor Real Estate on Heath's negligence claim is reversed, and the case remanded for further proceedings consistent with this opinion. No costs are awarded to either party.

Chief Justice BEVAN, and Justices BRODY, STEGNER, and MOELLER **CONCUR.**